Fred J. LaFortune, Trustee for Suzanne M. LaFortune, Renee Elizabeth LaFortune, and Colette M. LaFortune, et al.,[1] Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 60740–60745, 62737, 62738, 62876–62879. Filed December 20, 1957.

*Corinne Childs, Esq.,* for the petitioners.
*J. C. Linge, Esq.,* for the respondent.

---

[1] The following proceedings are consolidated herewith : Jeanne LaFortune Henry, Trustee for Patrick Joseph Henry and Carol Jean Henry, Docket No. 60741; J. A. LaFortune, Docket No. 60742; Lucius LaFortune, Trustee for Daniel LaFortune and Kathryn La-Fortune, Docket No. 60743; Mary Ann LaFortune Wilcox, Trustee for Homer Frank Wilcox, Jr., and Mary Teresa Wilcox, Docket No. 60744; Gertrude L. LaFortune, Docket No. 60745; J. A. LaFortune, Docket No. 62737; Gertrude L. LaFortune, Docket No. 62738; Joseph A. LaFortune, Jr., Donee and Transferee of J. A. LaFortune, Docket No. 62876; Joseph A. LaFortune, Jr., Donee and Transferee of Gertrude L. LaFortune, Docket No. 62877; Robert James LaFortune, Donee and Transferee of J. A. LaFortune, Docket No. 62878; and Robert James LaFortune, Donee and Transferee of Gertrude L. LaFortune, Docket No. 62879.

MULRONEY, *Judge:* The respondent determined deficiencies in gift tax of petitioners J. A. LaFortune and Gertrude L. LaFortune as follows:

| Year | Deficiency for J. A. LaFortune | Deficiency for Gertrude L. LaFortune |
| --- | --- | --- |
| 1952 | $5,810.65 | $3,881.13 |
| 1953 | 3,578.78 | 3,376.92 |
| 1954 | 4,850.05 | 4,139.26 |

The respondent determined transferee liability with respect to deficiencies in gift tax of J. A. LaFortune and Gertrude L. LaFortune for the taxable year 1951 as follows:

| Name of transferee | Amount of transferee liability | Name of transferee | Amount of transferee liability |
| --- | --- | --- | --- |
| Fred J. LaFortune, trustee for Suzanne M. LaFortune, Renee Elizabeth LaFortune, and Colette M. LaFortune | $759.61 | Joseph A. LaFortune, Jr., donee and transferee of J. A. LaFortune | $759.61 |
| Jeanne LaFortune Henry, trustee for Patrick Joseph Henry and Carol Jean Henry | 1,577.92 | Joseph A. LaFortune, Jr., donee and transferee of Gertrude L. LaFortune | 1,577.92 |
| Lucius LaFortune, trustee for Daniel LaFortune and Kathryn LaFortune | 759.61 | Robert James LaFortune, donee and transferee of J. A. LaFortune | 759.61 |
| Mary Ann LaFortune Wilcox, trustee for Homer Frank Wilcox, Jr., and Mary Teresa Wilcox | 1,577.92 | Robert James LaFortune, donee and transferee of Gertrude L. LaFortune | 1,577.92 |

The issues in these consolidated cases are: (1) Whether certain gifts made to various trusts by J. A. LaFortune and Gertrude L. LaFortune in 1951 through 1954 were gifts of "future interests" or "present interests" within the meaning of section 1003 (b) (3) of the Internal Revenue Code of 1939;[2] (2) if any of such gifts were of present interests, are the values thereof susceptible of determination; and (3) if such gifts were of future interests or not susceptible of determination, so that no exclusions are allowable for the gifts, are the petitioners in Docket Nos. 60740, 60741, 60743, 60744, 62876, 62877, 62878, and 62879 liable as transferees for the resulting deficiency for 1951?

All of the facts were stipulated and are found accordingly. So much of the facts as is necessary to the understanding of the issues presented will be stated. Some adjustments were agreed upon by the parties and are to be considered on a Rule 50 computation.

J. A. LaFortune and Gertrude L. LaFortune, sometimes hereinafter referred to as the donors, are husband and wife and both filed

---

[2] All section references are to the Internal Revenue Code of 1939, as amended, unless otherwise noted.

United States gift tax returns for the years 1951 to 1954, inclusive, with the district director of internal revenue, or his predecessor in office, at Oklahoma City, Oklahoma. Their gift tax returns for 1951 were filed on March 15, 1952.

The total gifts made in the years before us by J. A. LaFortune to his children, grandchildren, relatives and other individuals, and charitable organizations, are set out in the column headed "Total gifts" below. Included in that figure are the total gifts made by J. A. LaFortune to various trusts for the benefit of minors:

| Year | Total gifts | Gifts to trusts for minors |
|------|-------------|----------------------------|
| 1951 | $36,171.83 | $3,617.20 |
| 1952 | 64,841.71 | 27,576.55 |
| 1953 | 59,053.13 | 36,000.00 |
| 1954 | 56,137.52 | 40,543.75 |

The total gifts made in the years before us by Gertrude L. LaFortune to her children, grandchildren, relatives and other individuals, and charitable organizations, are set out in the column headed "Total gifts" below. Included in that figure are the total gifts made by Gertrude L. LaFortune to various trusts for the benefit of minors:

| Year | Total gifts | Gifts in trust for minors |
|------|-------------|---------------------------|
| 1951 | $34,725.03 | $14,468.75 |
| 1952 | 52,868.75 | 23,850.00 |
| 1953 | 85,837.50 | 32,400.00 |
| 1954 | 105,390.64 | 37,425.00 |

The gifts made to 13 separate trusts for the benefit of minors, each trust having a single beneficiary, during the taxable years 1951 and 1952, by J. A. LaFortune and Gertrude L. LaFortune were made under trust agreements which included, among other provisions, the following:

Trustee is specifically directed and authorized to pay over the net balance of the said income at least annually to the beneficiary, or to the guardian of said beneficiary if a guardian for the property of said beneficiary has been appointed by the proper court;

    *      *      *      *      *      *      *

Trustee shall have the right and authority, in [his or] her *sole discretion*, to terminate this trust at any time [he or] she deems it for the best interests of the beneficiary to do so, and, in any event, this trust shall terminate upon the date on which said beneficiary attains the age of majority or upon the death of the beneficiary, should he [or she] die before attaining the age of majority. In the event of the termination or failure of this trust, the principal thereof and any income which has accumulated shall be distributed to the beneficiary

or, if the beneficiary has not reached the age of majority, may be distributed to the guardian of said beneficiary if a guardian for the property of said beneficiary has been appointed by the proper court. If the beneficiary should die with or without leaving surviving issue prior to the termination of his [or her] trust, the property of the trust shall be distributed to his [or her] heirs in accordance with the laws of descent and distribution of the State of Oklahoma. * * * [Emphasis added.]

The trustee named in each of the 13 trust agreements referred to in the preceding paragraph is the parent of the beneficiary named in the agreement, and the first successor trustee named is the beneficiary's other parent. The trust agreements were identical insofar as pertinent provisions are concerned.

The petitioners and donors, J. A. LaFortune and Gertrude L. LaFortune, claimed the annual exclusion under the provisions of section 1003 (b) (3) for each of the gifts made to the various trusts in 1951 and 1952. The respondent disallowed the exclusions in full.

The gifts to 16 separate trusts for the benefit of minors, each trust having a single beneficiary, made during the years 1953 and 1954 by J. A. LaFortune and Gertrude L. LaFortune were made under trust agreements which included, among other provisions, the following:

Trustee is specifically directed and authorized to pay over the net balance of the said income at least annually to the beneficiary, or to the guardian of said beneficiary if a guardian for the property of said beneficiary has been appointed by the proper court;

\*       \*       \*       \*       \*       \*       \*

This trust shall terminate upon the date on which said beneficiary attains the age of majority or upon the death of the beneficiary, should he [or she] die before attaining the age of majority. * * *

The trustee named in each of the 16 trust agreements referred to in the preceding paragraph is the parent of the beneficiary named in the agreement, and the first successor trustee named in each such trust is the beneficiary's other parent, except that no successor trustee is named for Lucius LaFortune, trustee. The trust agreements were identical insofar as pertinent provisions are concerned.

None of the 29 separate trust agreements executed in the years before us to which petitioners J. A. LaFortune and Gertrude L. LaFortune made gifts were terminated by any of the trustees named therein.

Petitioners and donors, J. A. LaFortune and Gertrude L. LaFortune, claimed the annual exclusion under the provisions of section 1003 (b) (3) for each of the gifts made to the various trusts in 1953 and 1954. The respondent disallowed the exclusions with respect to corpus for each trust but allowed exclusions based on the value of each beneficiary's present right to receive the income from the separate trusts.

On or about January 3, 1951, gifts of Warren Petroleum Corporation common stock were made by J. A. LaFortune and received by the following named donees in the amounts stated as follows:

| Donee | Docket No. | Amount |
|---|---|---|
| Fred J. LaFortune, trustee for Suzanne M. LaFortune, Renèe LaFortune, and Colette M. LaFortune | 60740 | $2,170.31 |
| Lucius LaFortune, trustee for Daniel LaFortune and Kathryn LaFortune | 60743 | 1,446.87 |
| Joseph A. LaFortune, Jr | 62876 | 2,893.75 |
| Robert James LaFortune | 62878 | 2,893.75 |

On or about January 3, 1951, gifts of Warren Petroleum Corporation common stock were made by Gertrude L. LaFortune and received by the following named donees in the amounts stated as follows:

| Donee | Docket No. | Amount |
|---|---|---|
| Jeanne LaFortune Henry, trustee for Patrick Joseph Henry and Carol Jean Henry | 60741 | $5,787.50 |
| Mary Ann LaFortune Wilcox, trustee for Homer Frank Wilcox, Jr., and Mary Teresa Wilcox | 60744 | 5,787.50 |
| Joseph A. LaFortune, Jr | 62877 | 2,893.75 |
| Robert J. LaFortune | 62879 | 2,893.75 |

The statutory notice of deficiency issued in each of the following cases was mailed to the petitioner by registered letter on the following dates:

| Docket No. | Dates of statutory notice | Docket No. | Dates of statutory notice |
|---|---|---|---|
| 60740 | Oct. 26, 1955 | 62876 | Mar. 14, 1956 |
| 60741 | Oct. 26, 1955 | 62877 | Mar. 14, 1956 |
| 60743 | Oct. 26, 1955 | 62878 | Mar. 14, 1956 |
| 60744 | Oct. 26, 1955 | 62879 | Mar. 14, 1956 |

The donors contend that all gifts made by them to trustees for the benefit of minors during the years 1951 through 1954 were gifts of present interests in property, and that annual exclusions should be allowed with respect to each gift in an amount equal to the value of each gift not to exceed $3,000. The respondent makes different arguments as to gifts made in 1951 and 1952 and gifts made in 1953 and 1954, as gifts made in the latter 2 years were made under the provisions of different type trust agreements.

The respondent contends that the gifts made in 1951 and 1952 were, under the provisions of the current trust agreements, gifts of future interests with respect to the corpus of each gift, and gifts of present interests of an indeterminate value with respect to the right to income from each trust. Therefore, argues the respondent, the donors are not entitled to an annual exclusion in any amount under section 1003 (b) (3) with respect to either corpus or income. As to

gifts made in 1953 and 1954, the respondent contends that the gifts of corpus were of future interests, but the gifts with respect to income were of present interests of a presently determinable value. Therefore, the respondent allows the donors an exclusion based on the beneficiary's right to income for gifts made in 1953 and 1954.

For Federal gift tax purposes, a gift in trust under provisions deferring distribution of principal and/or income creates one interest in the income of the trust and another interest in the principal or corpus of the trust. As was stated in *Herrmann's Estate* v. *Commissioner*, 235 F. 2d 440, affirming T. C. Memo. 1955–212, concerning these two interests:

Either or both may be present interests to which the exclusion would be applicable, and either or both may be future interests with respect to which the exclusion would be denied. The fact that one of these may be regarded as a future interest does not of itself prevent the other from being a present interest. * * *

We will first consider the gifts made in 1951 and 1952 and the trust agreements under which the gifts were made. Our discussion of the law pertaining to future interests as to corpus and income can be applied to all years before us. To this extent there will be an overlapping as to years and also the distinctions made in trust principal and income.

The committee reports of Congress define a "future interest in property" for gift tax purposes as "any interest or estate, whether vested or contingent, limited to commence in possession or enjoyment at a future date." H. Rept. No. 708, 72d Cong. 1st Sess., 1939–1 C. B. (Part 2) 478. This definition was quoted with apparent approval by the Supreme Court of the United States in *United States* v. *Pelzer*, 312 U. S. 399. A gift in trust is so limited when the provisions thereof contain a substantial barrier to the present use, possession, or enjoyment by the donee. *Commissioner* v. *Disston*, 325 U. S. 442, *Fondren* v. *Commissioner*, 324 U. S. 18.

Our problem is to determine whether such a barrier separates the beneficiary from his or her absolute rights to the present enjoyment of the gift property. In the instant case, the provisions of each trust agreement (1951–1952) made the beneficiary's right to corpus depend upon three contingencies. First, the beneficiary would obtain full rights to the principal when reaching majority. Second, if the beneficiary died prior to that time, his or her heirs would receive the principal. Certainly these two provisions postpone the possession and enjoyment of the trust and the donors do not contend otherwise. The third contingency, according to the donors, converts, what so far is obviously a future interest, into a present interest. That provision empowers the trustee, in his or her *sole discretion*, to terminate and distribute the corpus of the trust

at any time it is considered to be in the best interests of the beneficiary to do so.

Generally speaking, the fact that the trustee has sole discretion to distribute or not distribute principal or income is a conclusive argument that any gift so placed in trust is of a future interest. *Welch* v. *Paine*, 130 F. 2d 990, *Celia Goldstein*, 26 T. C. 506. This is generally true because of the fact that if a beneficiary must look to the trustee's discretion to gain the possession or enjoyment of the property, certainly a substantial barrier to such possession and enjoyment exists. We stated in *Abraham M. Katz*, 27 T. C. 783, 785, that "at the very least, the beneficiary or someone standing in his shoes (such as a guardian or a parent) must have the unqualified right to demand at any time that the property be turned over to the beneficiary or applied for his benefit." See also *William Goehner*, 28 T. C. 542.

The petitioners seem to argue that it makes a difference that in each trust agreement the parent of the beneficiary under the trust is the named trustee. This fact, argue the petitioners, brings the instant case within the rule set forth in *George W. Perkins*, 27 T. C. 601. In the *Perkins* case, a settlor created separate trusts for his grandchildren. The trust instruments named a corporation, the settlor, and the parents of the individual beneficiaries as cotrustees. Income of the trusts was to be applied in the discretion of the trustees for education, support, and maintenance of the beneficiaries until age 25. Accumulated income was to be paid the beneficiary at age 21 and then currently as earned until age 25, when the trust was to terminate. Each trust instrument also provided that the beneficiary, or his parent, or duly qualified guardian, could *demand at any time all or any part of the principal and accumulated income*. In concluding that the gifts in the *Perkins* case were of present interests, we held that there was at all times someone who could, under the trust agreement, make an effective demand for principal and income. We stated that the parents "by clear and unambiguous language," were given the power to make such a demand on behalf of their children.

We fail to see how the instant case comes within any "rule" set forth in the *Perkins* case. There, as we have stated, the beneficiary, or his parent, or a duly appointed guardian, was specifically empowered to make the all important demand for the gift property at any time. In the instant case, no one was empowered by the trust agreement to make such a demand. The lack of such authority is decisive. A trust provision which empowers a trustee to terminate a trust at will cannot be termed clear and unambiguous language empowering the parents or natural guardian of a minor to demand principal and income of a trust for the minor, even though the trustee happens also to be a parent of the minor.

A trustee, simply because he is a beneficiary's parent, cannot be said to stand in the shoes of the beneficiary. See *Frances McGuire Rassas*, 17 T. C. 160, affd. 196 F. 2d 611, and *Welch* v. *Paine, supra,* for cases in which the court apparently ignored the fact that the parent or parents of the beneficiaries were named as trustees and held, under similar trust provisions, that neither the beneficiaries nor anyone standing in the shoes of the beneficiaries, could make an effective demand for the property. We so hold in the instant case. We, therefore, conclude that the gifts of corpus made in 1951 and 1952 were gifts of future interests for which the petitioners are not entitled to any annual exclusion.

The second question before us deals with whether exclusions are allowable in any amount for gifts of the right to receive income made in 1951 and 1952. As we have stated, respondent admits that the donors made gifts of present interests of the right to such income but determined that the value of such present interest was not susceptible of determination due to the provision in the trust agreement which allowed the trustee, in his sole discretion, to terminate the trust at any time. The respondent's position is set forth in Rev. Rul. 54-92, 1954-1 C. B. 207, as follows:

Where a gift is made in trust the terms of which provide that the trustee is to pay the income to a designated beneficiary and that the trustee may distribute such parts of the trust principal to the beneficiary as in his uncontrolled discretion he may deem necessary and proper, it is held that the income which will be distributed to the beneficiary, which is the beneficiary's present interest, is not susceptible of determination and that under such circumstances no exclusion is allowable under section 1003 (b) (3) of the Internal Revenue Code with respect to the gift made of the right to receive income from the property transferred. See *Sylvia H. Evans* v. *Commissioner*, 198 Fed. (2d) 435.

The facts of the instant case come within those of *Hermann's Estate* v. *Commissioner, supra,* a recent affirmance of the Tax Court. In the cited case, as well as the instant case, the direction to pay out income was unconditional. There were provisions that would result in the creation of a present interest as to income, yet it was concluded that the exclusion had to be denied because the trustee could distribute all or any portion of trust corpus to the extent deemed necessary in the sole judgment of the trustee. It was pointed out that the taxpayers have the burden of showing not only the right to the exclusion but also the amount. It was further stated:

Where, as here, the trustee is authorized to distribute all or any part of the principal, the distribution, be it little or much, would result in a ratable reduction in the trust income and a proportional reduction in the income producing potential of the trust res. Since it cannot be known, at the creation of the trust, what part, if any, of the trust principal will be distributed, or when, if ever, any principal distributions will be made, there is no basis or formula by which the future interest can be valued, and the taxpayers are unable to meet the burden imposed on them to establish a value. * * *

In *Jennie Brody*, 19 T. C. 126, 128, the trust instrument provided the trust income be paid to beneficiaries for life and further provided:

Trustees may, in their sole, absolute and unlimited discretion, distribute, pay over and transfer to any of the beneficiaries * * * the corpus of any of their respective trusts, prior to the date of distribution set forth in each such respective trust; * * *

In denying the exclusion we held (p. 132):

It appears at once that the gifts of income are present interests which can not be valued because the trustees could, pursuant to the discretion granted in the above-quoted paragraph, destroy the income interests at any time by an exercise of their unlimited discretion to distribute the corpus. * * *

In the instant case, the petitioners made no attempt to meet the burden of showing what the value of such a gift, and subsequent exclusion, should be. We therefore hold, even if it were possible to meet such a burden in our case, that the petitioners have not done so and the respondent's determinations denying any exclusions based on the right to receive income from gifts made in 1951 and 1952 are correct.

We next consider the provisions of the trust agreements under which gifts were made by the donors in 1953 and 1954. The major difference in these provisions, as opposed to the 1951 and 1952 provisions, is that the trustees were not given the discretion to terminate the 1953 and 1954 trusts. The dates on which the beneficiaries or their heirs could acquire the principal of each trust were (1) upon majority, or (2) in the event of death before majority. There were no provisions empowering anyone, even the trustee, to terminate, demand, or distribute the principal before these contingencies occurred.

The petitioners advance two arguments for the proposition that the gifts of corpus in 1953 and 1954 were of present interests. The first argument is that each trust agreement provided that in the event of failure of a trust, the principal and accumulated income should be distributed to the beneficiary. None of the trusts have failed nor are we told what would cause a failure. Certainly, neither the beneficiary nor anyone standing in his or her shoes is empowered to cause such a failure and subsequent distribution.

The second argument is that the gift of corpus to each trust was of a present interest because of a provision in each trust instrument allowing the trustee in his or her sole discretion to determine what shall constitute income and what shall constitute principal of the trust. We are not told in what manner this provision could convert a future interest into a present interest and we fail to see what possible bearing such a provision could have on the issue before us.

We conclude that the gifts of corpus made in 1953 and 1954 were gifts of future interests for which no exclusions are allowed. As to gifts of the right to trust income, the respondent admits that such gifts were of present interests in 1953 and 1954. The respondent

has determined a value for the present interest of trust income for 1953 and 1954. The petitioners have presented no proof that such computation is incorrect; therefore, we approve the respondent's determination.

We have found that deficiencies in gift tax exist for the years 1951, 1952, 1953, and 1954 as a result of gifts made by J. A. LaFortune and Gertrude L. LaFortune. The respondent determined that the donors are liable for such deficiencies for the years 1952, 1953, and 1954, and we agree.

Our last issue deals with the liability for the deficiencies in gift tax for 1951. The parties agreed that assessment against the donors for any unpaid gift tax liability for gifts made in 1951 is barred by the statute of limitations. The respondent therefore contends that the donees are liable for any deficiencies in such tax as donee-transferees for 1951 to the extent of the value of the gift received.

There can be no doubt but that a donee as transferee is liable for gift tax of his donor to the extent of the value of the gift received if it is not paid when due. Secs. 1009 and 1025 (f). This is true even though the donor is solvent and no steps have been taken to determine a deficiency against the donor, and the right to make a deficiency assessment against him has become barred by the statute of limitations. *Mississippi Valley Trust Co.* v. *Commissioner*, 147 F. 2d 186, affirming a Memorandum Opinion of this Court dated June 10, 1943.

The petitioners make many arguments concerning this issue. First of all, the petitioners in Docket Nos. 60740, 60741, 60743, and 60744 contend that the statutory notices in these dockets are insufficient; that there is a misjoinder of parties; and that we are therefore without jurisdiction. The argument is that one notice of deficiency (determination of transferee liability) was sent to the petitioner in each of these dockets as individual trustee of more than one trust as if the trustee were trustee for several beneficiaries under a single trust. The argument goes on to state that such notices of deficiency provide no means nor method for determining the gift tax liability, if any, of each of the donees for whom the petitioner trustees were acting.

We feel that the contested notices of transferee liability were sufficient. Each notice stated that each of the petitioner trustees was liable for unpaid gift taxes as trustee and transferee of property received from the donors as gifts under trusts for the benefit of certain named beneficiaries. There is no question that each trustee received from the donors, as fiduciaries for the donees, during 1951, property having a value in excess of the liability asserted against him or her. The recipients, amounts, and dates of the gifts are

stipulated facts. The petitioner trustees admit that they received this property as fiduciaries of the donees. It seems to us immaterial whether one beneficiary, several beneficiaries, or none, are named in the statutory notices. Such notices would be sufficient if they had set forth only the name of the trustees who had possession and control of the property gratuitously transferred. *Fletcher Trust Co.* v. *Commissioner*, 141 F. 2d 36, affirming 1 T. C. 798.

The argument that the notices provide no means for determining the liability, if any, of each trust donee is without merit. Neither the respondent nor this Court has the responsibility of prorating the liability of transferees or directing that it be satisfied out of any particular trust where the trustee-transferee is administering more than one trust. Each donee is liable to the extent of the value of his gift for unpaid tax on all gifts made by a donor during the same calendar year. *Marguerite E. Baur*, 2 T. C. 1016, affd. 145 F. 2d 338.

Petitioners also argue that (1) the respondent has made no effort to assert any liability against the donors for their 1951 gifts and (2) the respondent has not shown the donors to be insolvent, therefore, there can be no transferee liability. It is well settled that it is neither necessary to assert a deficiency against a donor nor determine him insolvent in order to determine transferee liability against a donee-transferee. *Mississippi Valley Trust Co.* v. *Commissioner, supra, Fletcher Trust Co.* v. *Commissioner, supra.*

The petitioners also contend that the assertion of liability for 1951 gift taxes is barred by the statute of limitations, not only as to the donors but as to the donee-transferees. The petitioners advance no reasons for the assertion and it is obvious to us that this argument is also without merit. The donors filed their 1951 gift tax returns on March 15, 1952. Section 1016 states that the "amount of taxes imposed by this chapter shall be assessed within three years after the return was filed * * *." Under section 1025, liability of a transferee of property of a donor shall be assessed in the same manner as in the case of a deficiency but assessment of such liability against a transferee may be made "[w]ithin one year after the expiration of the period of limitation for assessment against the donor."

In the instant case, section 1016 barred the determination of liability against the donors on March 15, 1955. Under section 1025 (b) (1) the respondent had until March 15, 1956, to determine transferee liability against the donees. It has been stipulated that statutory notices were mailed to each donee-transferee prior to March 15, 1956, and therefore within the period allowed by statute. Those timely notices extended the time within which assessment could be made.

The last argument made is that the petitioners in Docket Nos. 62876, 62877, 62878, and 62879 cannot be liable for gift tax liability as transferees, as no part of the alleged deficiencies for the year 1951 is attributable to gifts made to these petitioners. The petitioners in these dockets were direct donees of the donors and it was stipulated that they received gifts in 1951 from the donors in amounts in excess of the deficiency in gift tax of the donors for 1951. It is true that no part of the deficiencies for 1951 is attributable to gifts made to these petitioners but this does not relieve them of transferee liability. As we have previously stated in this Opinion, each donee is liable to the extent of the value of his gift for any unpaid tax on *all* gifts made by the donor in the same calendar year. *Marguerite E. Baur, supra.* The petitioners' gifts were part of "all" of the donors' gifts made during 1951 and they are also liable for the unpaid gift tax of that year.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

MURDOCK, *J.*, concurring: The reasoning in this case that a beneficiary has received no present gift of corpus because there will be some delay in its actual receipt and that he has received no present gift of income because the trust income may be terminated at any time by a transfer of the corpus to him, overlooks reality. The beneficiary received a present gift worth at least the present value of the income. See my dissent in *William Harry Kniep*, 9 T. C. 943, 946. However, the Tax Court has been taking the opposite view and that view has been consistently affirmed on appeal and I feel this Court should not change its position now. Cf. *Arthur L. Lawrence*, 27 T. C. 713. See sec. 2503 (c), I. R. C. 1954.

---

TURNER, *J.*, dissenting: I am in complete accord with the holding that the gift of the right to income was the gift of a present interest and the gift of the right to corpus the gift of a future interest, under the *Disston* and *Fondren* cases. I do not agree, however, that because the trustee, in his discretion, could distribute the trust corpus at any time, the size or value of the present interest was, or could be, any less than it would have been if the grant to trust had placed no such discretionary power in the trustee. Or, stated differently, I am unable to see how the size and amount of a gift of a right to receive currently the income from certain property for a stated period is in any way lessened or made indeterminable merely because, at the discretion of the trustee, the recipient of the gift of the right to income could at any time become the possessor and title owner of the income-producing

property itself. The valuation of a right to income of certain property for a period of years or for the life of an individual has not heretofore presented unsurpassable difficulties, and I do not believe it does so here.

*William Harry Kniep*, 9 T. C. 943, was a different case. In that case there was only one trust, with six beneficiaries, and under the trust the trustee might invade corpus for the benefit of one or more of the beneficiaries at the expense of the others. Such authorized disproportionate distributions of corpus among the beneficiaries could result in variations in the size and values of the income interests of the beneficiaries, which could not be foreseen or determined as of the date of the gifts of the rights to income. In the instant case, each trust had a single beneficiary and no part of either the present interest in the trust income or the future interest in the trust corpus could be shifted to anyone else. The only result which could flow from the exercise by the trustee of his discretion to distribute the trust corpus prior to the time specified in the trust instrument would be that the beneficiary would, in addition to the income from the property which he was to receive currently, receive possession and title to the property itself in advance of the time provided therefor in the trust instrument.

I agree that the views which I have expresed above are contrary to the pronouncements of the court in *Herrmann's Estate* v. *Commissioner*, 235 F. 2d 440, affirming T. C. Memo. 1955–212. And while I am in complete accord with what we said in *Arthur L. Lawrence*, 27 T. C. 713, I do not feel that we thereby committed ourselves to the persistent following of a previously decided case, if we should become convinced that the decision therein was wrong, and it being my opinion that *Herrmann's Estate* v. *Commissioner* was incorrectly decided, I am of the view that it should not be followed.

FORRESTER, *J.*, agrees with this dissent.

---

WITHEY, *J.*, dissenting: I disagree with the majority report in this case respecting the gift which passed by virtue of the 1951–1952 trust instrument. In my view the powers of the trustee in that instrument are exactly the same as the general powers of a guardian of a minor. They are so broad that the beneficiaries of that trust at the moment of execution of the trust instrument have all the incidents and advantages of ownership in the corpus of the trust that it is possible for a minor to have. One of the incidents of ownership is the right to income from property, present and future. The real gift here was a gift only of the corpus of the trust. The present right to receive income in the future did not in reality pass by virtue of the trust instrument but instead passed by virtue of the fact that ownership of the corpus, from which such income is normally expected to be derived, passed as com-

pletely as possible to the minor beneficiaries by that instrument. For that reason alone the exclusion should not be granted with respect to the claimed right to future income, there being no separate gift of such a right.