DANIEL V. TILTON, TRANSFEREE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

DAVID V. TILTON, TRANSFEREE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 12017-82, 12022-82. Filed March 16, 1987.

Daniel V. Tilton and David V. Tilton, pro se.
*Willie Fortenberry*, for the respondent.

FEATHERSTON, *Judge*: Respondent determined that petitioners are liable, as transferees and donees of the assets of their parents, Woodrow W. and Vella V. Tilton,[1] for Federal

---

[1]Originally consolidated for trial with the above-captioned cases was the redetermination of gift tax deficiencies and additions to tax as follows:

*Docket No. 12023-82: Vella V. Tilton*

| Taxable period ended | Gift tax deficiency | Addition | |
| | | Sec. 6651(a)(1), I.R.C. 1954 | Sec. 6653(a), I.R.C. 1954 |
| 6/30/78 | $331,685 | $82,921.25 | $16,584.25 |

gift tax and additions to tax under sections 6651(a)(1)[2] and 6653(a) as follows:

Docket No. 12017-82: Daniel V. Tilton

| Taxable period ended | Gift tax deficiency | Addition | |
| --- | --- | --- | --- |
| | | Sec. 6651(a)(1) | Sec. 6653(a) |
| 6/30/78 | $331,685 | $82,921.25 | $16,584.25 |

Docket No. 12022-82: David V. Tilton

| Taxable period ended | Gift tax deficiency | Addition | |
| --- | --- | --- | --- |
| | | Sec. 6651(a)(1) | Sec. 6653(a) |
| 6/30/78 | $331,685 | $82,921.25 | $16,584.25 |

The issues for decision are:

(1) Whether petitioners are liable as donees and transferees of assets of their parents, Woodrow W. and Vella V. Tilton, for the gift tax liability for the taxable period ended June 30, 1978, and additions to tax under sections 6651(a)(1) and 6653(a) resulting from transfers of real property from their parents to petitioners on April 4, 1978; and

(2) Whether petitioners, as sole shareholders of Circle Bar Ranch, Inc., are liable as donees and transferees for the gift tax liability with respect to a transfer of 3,599 acres of real property from Woodrow W. and Vella V. Tilton to Circle Bar Ranch, Inc., on April 4, 1978.

## FINDINGS OF FACT

Petitioner Daniel V. Tilton (Daniel) resided in Palatka, Florida, at the time his petition was filed. Petitioner David

---

Docket No. 12155-82: Woodrow W. Tilton, Sr.

| Taxable period ended | Gift tax deficiency | Addition | |
| --- | --- | --- | --- |
| | | Sec. 6651(a)(1), I.R.C. 1954 | Sec. 6653(a), I.R.C. 1954 |
| 6/30/78 | $319,385 | $79,846.25 | $15,969.25 |

No one appeared on behalf of Woodrow and Vella Tilton when the cases were called for trial. Docket Nos. 12017-82, Daniel V. Tilton, Transferee, and 12022-82, David V. Tilton, Transferee, were severed by order dated Mar. 4, 1986, and docket Nos. 12023-82, Vella V. Tilton, and 12155-82, Woodrow W. Tilton, were dismissed for lack of prosecution by order dated Apr. 8, 1986. Petitioners David V. and Daniel V. Tilton, whose liabilities as donees and transferees are here in dispute, stated they had no objection to the dismissals and the entry of decisions sustaining the determined liabilities in docket Nos. 12023-82 and 12155-82.

[2] All section references are to the Internal Revenue Code of 1954 as amended, unless otherwise noted.

V. Tilton (David) resided in Provo, Utah, at the time his petition was filed. Woodrow W. Tilton (Woodrow) and Vella V. Tilton (Vella) are the parents of Daniel and David.

In 1972, Woodrow formed a corporation known as Circle Bar Ranch, Inc. (Circle Bar), and prior to November 1977 owned all the stock in the corporation. On or about November 15, 1977, Woodrow transferred all of the Circle Bar stock in equal shares to Daniel and David. The record does not show that any gift tax liability was determined with respect to these stock transfers.

On April 4, 1978, Woodrow and Vella made the following transfers of real property:

| Putnam County Official Record Book/page | Property | Recipient(s) of the property | Transferors |
|---|---|---|---|
| 358/1529 | 1 Lot | Lawrence and Donna Tilton[1] | Vella |
| 358/1530 | 10 Lots | Daniel | Vella |
| 358/1531 | 180 Acres | David | Woodrow and Vella |
| 358/1533 | 40 Acres | Daniel and David | Woodrow and Vella |
| 358/1534 | 175 Acres | Daniel | Woodrow and Vella |
| 358/1536 | 3,599 Acres | Circle Bar | Woodrow and Vella |

[1]Lawrence V. Tilton is also the son of Woodrow and Vella.

The fair market values as of April 4, 1978, of the properties transferred from Woodrow and Vella to David and Daniel are as follows:

| Putnam County Official Record Book/page | Property | Recipient(s) of the property | Fair market value as of 4/4/78 without taking into consideration encumbrances as of that date |
|---|---|---|---|
| 358/1530 | 10 Lots | Daniel | $20,000 |
| 358/1531 | 180 Acres | David | 94,500 |
| 358/1533 | 40 Acres | David and Daniel | 21,000 |
| 358/1534 | 175 Acres | Daniel | 91,875 |

The amounts of indebtedness encumbering the acreage transferred by Woodrow and Vella to Daniel and David on April 4, 1978, are as follows:

| Putnam County Official Record Book/page | Property | Recipient(s) of the Property | Indebtedness on the property as of 4/4/78 |
|---|---|---|---|
| 358/1531 | 180 Acres | David | $54,005 |
| 358/1533 | 40 Acres | David and Daniel | 26,600 |
| 358/1534 | 175 Acres | Daniel | 48,810 |

The fair market value of the 3,599 acres of real property transferred by Woodrow and Vella to Circle Bar without taking into consideration any indebtedness which may have encumbered the property as of April 4, 1978, the date of the transfer, according to the stipulation of facts, is $1,000,400. For several months prior to, during, and subsequent to April 1978, Daniel and David were the sole shareholders of Circle Bar.

On November 27, 1978, respondent mailed a notice of deficiency to Woodrow and Vella with respect to their 1973 income taxes. On March 10, 1983, the Tax Court entered its decision that Woodrow and Vella were liable for a deficiency in income tax for the 1973 taxable year in the amount of $475,544 and for additions to tax under sections 6651(a)(1) and 6653(a) in the amounts of $23,777 under each section.

After Woodrow transferred the Circle Bar stock to his sons in late 1977, Daniel became the president of Circle Bar and David its secretary. Woodrow continued to participate in the operation of Circle Bar as a consultant.

On June 23, 1981, Circle Bar filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (bankruptcy court). On January 14, 1982, respondent made a jeopardy assessment against Woodrow and Vella of gift taxes and additions to tax for the period ended June 30, 1978, in the amounts set forth above. On April 6, 1982, respondent filed a Claim for Internal Revenue Taxes in the bankruptcy court asserting a statutory lien under section 6324(b) of the Internal Revenue Code for Federal gift taxes based on the transfers by Woodrow and Vella on April 4, 1978. Respondent also filed an unsecured claim for 1973 income taxes of $403,306.91 and pre-petition interest of $289,433.86, and an unsecured general claim of $44,089.97 for a pre-petition penalty, based on the theory that the April 4, 1978, transfer was fraudulent to it as a creditor.

On May 14, 1982, Circle Bar filed an action to determine its tax liability as donee and transferee of the assets of Woodrow and Vella under 11 U.S.C. section 505(a)(1) (1982)

in the adversary matter of *In Re: Circle Bar Ranch, Inc.,
Debtor, Circle Bar Ranch, Inc., Plaintiff vs. United States of
America, Defendant,* Case No. 81-458-BK-J-GP (bankruptcy
proceeding).

On March 7, 1983, the bankruptcy court entered its
Findings of Fact and Conclusions of Law allowing the
Government's secured claim based on the transfer to Circle
Bar of real property and stating that the "net equity
conveyed had a value of $1,000,400," on the date of the
transfer. The court declined to find that the value of the
transfer was to be reduced by any liabilities assumed by
Circle Bar or that Circle Bar had established any prior liens
against the property. The bankruptcy court also allowed the
Government's unsecured claim for income tax and additions
to tax for 1973 on the ground that Woodrow and Vella had
transferred property to Circle Bar in fraud of the Govern-
ment as one of their creditors. *In re Circle Bar Ranch, Inc.
v. United States,* an unreported case (Bankr. M.D. Fla.
1983, 52 AFTR 2d 83-5065, 83-1 USTC par. 13,516).
Respondent has received $47,397.54 from the bankruptcy
proceeding, which has been applied toward the gift tax
liability due and owing by Woodrow and Vella for the
period ended June 30, 1978.

The record does not contain complete information on the
financial condition of Circle Bar or the value of its stock
before or after the April 4, 1978, transfer. The record
contains no opinion or other evidence on the amount of the
increase, if any, in the value of the Circle Bar stock
attributable to the April 4, 1978, transfer.

## OPINION

Respondent contends that petitioners are liable as donee-
transferees of their parents' assets for the gift tax and
additions to tax resulting from transfers of real property
from Woodrow and Vella to petitioners, personally, and to
Circle Bar on April 4, 1978. In this connection, section
6901(a)(1)(A) authorizes the assessment of transferee liabil-
ity, at law or in equity, in the same manner as the liability
for gift taxes. This provision, however, does not create any

separate liability; it merely provides a secondary method for enforcing the existing liability of a transferor. *Mysse v. Commissioner*, 57 T.C. 680, 700-701 (1972).

The substantive question of whether a transferee is liable for his transferor's obligation and the extent of that liability usually depends on State law (*Commissioner v. Stern*, 357 U.S. 39, 45 (1958)); however, the substantive liability of a donee as transferee for unpaid gift tax is found in sections 6901(h) and 6324(b). *La Fortune v. Commissioner*, 263 F.2d 186, 194 (10th Cir. 1958), affg. 29 T.C. 479 (1957); *Estate of Mandels v. Commissioner*, 64 T.C. 61, 76 (1975).

Section 6901(h) provides that the term "transferee" as used in section 6901 includes a donee. Section 6324(b) provides:

SEC. 6324(b). LIEN FOR GIFT TAX.—Except as otherwise provided in subsection (c), unless the gift tax imposed by chapter 12 is sooner paid in full or becomes unenforceable by reason of lapse of time, such tax shall be a lien upon all gifts made during the period for which the return was filed, for 10 years from the date the gifts are made. If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift. * * * [3]

It will be observed that this language imposes a lien upon any gift to secure payment of the tax and, if the tax is not paid when due, personal liability on the donee "to the extent of the value of such gift."

With respect to petitioners' liability for unpaid gift tax resulting from the April 4, 1978, transfers from Woodrow and Vella to Daniel and David, personally, we see no alternative to holding petitioners liable as donee-transferees. Petitioners argue, however, that the amount of their liability should be limited to the "net fair market value"—the fair market value of the transferred properties less any indebtedness encumbering the properties on the date of the transfers. Respondent does not disagree with petitioners' contention. The fair market values of, and amounts of indebtedness on, the properties have been stipulated. We

---

[3]The exceptions in sec. 6324(c) are not relevant to the present controversy.

find that the following represents the net fair market value of those properties transferred directly to Daniel and David:

| Property | Recipient(s) of the property | Fair market value as of 4/4/78 | Indebtedness as of 4/4/78 | Net fair market value |
|---|---|---|---|---|
| 10 Lots | Daniel | $20,000 | 0 | $20,000 |
| 180 Acres | David | 94,500 | $54,005 | 40,495 |
| 40 Acres | David and Daniel | 21,000 | 26,600 | 0 |
| 175 Acres | Daniel | 91,875 | 48,810 | 43,065 |

The remaining issue is whether petitioners are liable as donee-transferees under sections 6901 and 6324(b) for the unpaid gift tax resulting from the transfer of 3,599 acres of land from Woodrow and Vella to Circle Bar on April 4, 1978. Respondent argues that as equal shareholders in Circle Bar at the time of the transfer, petitioners were indirect donees of the property, relying on the language of section 2511(a) and the regulations under that section, and are, consequently, liable for the unpaid gift tax under the second sentence of section 6324(b), quoted above.

The statutory framework for resolving this issue begins with section 2501(a)(1) which imposes a tax on any "transfer of property by gift" made by any "individual." Section 2511(a)[4] provides that the tax shall apply "whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible." The applicability of these provisions does not turn on donative intent but on a "much more workable external test, that where 'property is transferred for less than an adequate and full consideration in money or money's worth,' the excess in such money value 'shall, for the purpose of the tax imposed by this title, be deemed a gift * * * '. The section taxing as gifts transfers that are not made for 'adequate and full [money] consideration' aims to reach those transfers which are withdrawn from the

---

[4]SEC. 2511. TRANSFERS IN GENERAL.

(a) SCOPE.—Subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but in the case of a nonresident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States.

donor's estate." *Commissioner v. Wemyss*, 324 U.S. 303, 306, 307 (1945).[5]

Where property is gratuitously transferred by an individual who is a nonshareholder to a closely held corporation, the transfer is "generally" an "indirect" gift to the shareholders. Sec. 25.2511-1(h)(1), Estate and Gift Tax Regs., provides:

(h) The following are examples of transactions resulting in taxable gifts and in each case it is assumed that the transfers were not made for an adequate and full consideration in money or money's worth:

(1) A transfer of property by a corporation to B is a gift to B from the stockholders of the corporation. If B himself is a stockholder, the transfer is a gift to him from the other stockholders but only to the extent it exceeds B's own interest in such amount as a shareholder. *A transfer of property by B to a corporation generally represents gifts by B to the other individual shareholders of the corporation to the extent of their proportionate interests in the corporation.* However, there may be an exception to this rule, such as a transfer made by an individual to a charitable, public, political or similar organization which may constitute a gift to the organization as a single entity, depending upon the facts and circumstances in the particular case. [Emphasis added.] [6]

This regulation and the legislative history of section 2511(a) recognize that an individual may deplete his estate by gratuitously transferring property to a corporation owned by his family members, for example, to the same extent as if he made a direct transfer to the family members,

---

[5]The language quoted by the Supreme Court in *Commissioner v. Wemyss*, 324 U.S. 303, 304-305 (1945), was taken from the predecessor of sec. 2512(b) which is as follows:

"Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this title, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year."

[6]This regulation is supported by the legislative history of sec. 501 of the Revenue Act of 1932, the predecessor of secs. 2501 and 2511, which includes the following from S. Rept. 665, 72d Cong., 1st Sess. (1932), 1939-1 C.B. (Part 2) 496, 524:

The terms "property," "transfer," "gift," and "indirectly" are used in the broadest and most comprehensive sense; the term "property" reaching every species of right or interest protected by law and having an exchangeable value.

The words "transfer * * * by gift," and "whether * * * direct or indirect" are designed to cover and comprehend all transactions (subject to certain express conditions and limitations) whereby and to the extent * * * that property or a property right is donatively passed to or conferred upon another, regardless of the means or the device employed in its accomplishment. For example, (1) a transfer of property by a corporation without a consideration, or one less than adequate and fully in money or money's worth, to B would constitute a gift from the stockholders of the corporation to B; (2) *a transfer by A to a corporation owned by his children would constitute a gift to the children* * * * [Emphasis added.]

To the same effect is H. Rept. 708, 72d Cong., 1st Sess. (1932), 1939-1 C.B. (Part 2) 457, 476-477.

themselves. Where the shareholders, as in this case, are family members, this form of "indirect" transfer falls within section 2511(a).

The theory underlying the regulation was explained in *Kincaid v. United States*, 682 F.2d 1220, 1224 (5th Cir. 1982), where an 80-year old individual, Mrs. Kincaid, conveyed her 5,700-acre ranch, worth $634,000, to a newly created corporation in which she owned 34 percent, and her family members owned the remainder of the stock. Reversing a judgment based on a jury verdict, the Court of Appeals stated (p. 1224):

> As provided in the regulations, a "transfer of property by B to a corporation [for less than a full and adequate consideration in money or money's worth] generally represents gifts by B to the other individual shareholders of the corporation to the extent of their proportionate interests in the corporation." Treas. Reg. sec. 25.2511-1(h)(1). Mrs. Kincaid, therefore, made a gift to the shareholders of the corporation * * *
>
> The transaction here was in essence like the one held taxable in *Heringer v. Commissioner*, 235 F.2d 149 (9th Cir.), *cert. denied*, 352 U.S. 927, 77 S.Ct. 225, 1 L.Ed.2d 162 (1956). There two couples engaged in farming organized a corporation and received 40% of the stock while the remaining 60% of the stock was issued to their respective children. Thereafter, the couples transferred farm lands worth $641,443 to the corporation for no consideration. *The Ninth Circuit held that the stock owned by the children had been enhanced in value by the transfer so that a gift to them as shareholders had been made.* Since the children owned 60% of the corporation, the value of the gift was 60% of the property given to the corporation. Further, the court noted that the "family context of the transactions created a presumption of gift." *Id.* at 151. * * *
>
> [Emphasis added. Fn. ref. and citation omitted.]

See also *Helvering v. Hutchings*, 312 U.S. 393 (1941) (transfer to trust is a transfer to beneficiaries for purposes of the annual exclusion); *Chanin v. United States*, 183 Ct. Cl. 840, 847, 393 F.2d 972, 975 n. 2 (1968) ("Both parties are agreed that each stockholder and not the corporate entity is to be considered a donee."); *Georgia Ketteman Trust v. Commissioner*, 86 T.C. 91, 107 n. 13 (1986) ("Both parties herein agree that the gift by Mrs. Ketteman to the corporation should be regarded as a gift to the shareholders of the corporation."); cf. *Estate of Hitchon v. Commissioner*, 45 T.C. 96, 103-104 (1965) (gift in issue altered proportionate interests of the shareholders in the corporation).

Based on section 2511(a) and the amplifying regulation (sec. 25.2511-1(h)(1), Estate and Gift Tax Regs.) as so interpreted by the courts, respondent argues that Woodrow's and Vella's transfer of the 3,599 acres of land to the Circle Bar was an indirect gift of $1,000,400 to Daniel and David. Because Daniel and David were donees, even though indirect donees, respondent further contends that Daniel and David are liable for the unpaid tax on the gift under the second sentence of section 6324(b) which, as quoted above, provides that "If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift." We do not agree.

We have been unable to locate, and respondent has not cited, any case in which a shareholder of a corporation was charged with donee-transferee liability for gift taxes payable on a nonshareholder's transfer to the corporation.[7] Even assuming, without deciding, that an indirect donee-shareholder under section 2511(a) may be charged with transferee liability as a result of a gratuitous transfer to a corporation by a nonshareholder, however, we hold for petitioners on this issue.

Where transferee liability is determined against an indirect donee, the second sentence of section 6324(b) must be applied with caution. That sentence does not flatly make the donee-transferee liable for the tax. Rather, it carefully limits such liability to the extent of the value of the gift, and this means "the liability is limited to the value of the gift to the particular donee sought to be charged." *Want v. Commissioner*, 280 F.2d 777, 781 (2d Cir. 1960), revg. on other grounds 29 T.C. 1223 (1957); *La Fortune v. Commissioner*, 263 F.2d 186, 194 (10th Cir. 1958), affg. 29 T.C. 479

---

[7]In the trust area, the courts have addressed the transferee liability of trust beneficiaries as indirect donees where gratuitous transfers were made to the trusts by nonbeneficiaries. Transferee gift tax liability has been upheld in one case where the trust estate was found to be the transferee, as such, even though the beneficiaries were indirect donees under the predecessor of sec. 2511(a). *Fidelity Trust Co. v. Commissioner*, 141 F.2d 54, 57 (3d Cir. 1944), affg. an order of this Court. In another case, the beneficiary was found to be the transferee but the beneficiary's obligation was found to have been assumed by the trustee under the predecessor of sec. 6903. *Fletcher Trust Co. v. Commissioner*, 141 F.2d 36, 40-41 (7th Cir. 1944), affg. 1 T.C. 798 (1943). See also *Want v. Commissioner*, 280 F.2d 777, 782, (2d Cir. 1960), revg. on other grounds 29 T.C. 1223 (1958). A gift to a trust differs from a nonshareholder's gift to a corporation in that the trustee, not the beneficiary, controls the trust estate whereas the donee-shareholders may (and in this case did) control the corporation, and no statute comparable to sec. 6903 applies with respect to corporations.

(1958); *Baur v. Commissioner*, 145 F.2d 338, 339 (3d Cir. 1944), affg. 2 T.C. 1016 (1943).[8] In the case of a gift to a small solvent family corporation, as in the *Kincaid* and *Heringer* cases, the increased value of the corporation's assets attributable to the transfer would usually cause a proportionate increase in the value of the corporation's stock. That may not be true, however, in the case of an insolvent or nearly insolvent corporation.

The burden of proving transferee liability, including the value of the gift to the donee-transferee, rests with respondent. Sec. 6902(a); see also, e.g., *Ashton v. Commissioner*, 28 B.T.A. 582, 584-585 (1933); *Vogelstein v. Commissioner*, 16 B.T.A. 947, 949 (1929). Because section 6324(b) limits donee-transferee liability to the value of the gift to the particular donee, respondent has the burden of proving the amount of the increase, if any, in the value of the Circle Bar stock owned by Daniel and David attributable to the transfer and he has not carried that burden.

The trial record before us contains no complete or precise information on the assets or liabilities of Circle Bar or opinion evidence on the valuation of the stock before or after the April 4, 1978, transfer. If Circle Bar's stock had a zero value both before and after the transfer, there was no enhancement in the value of the stock in the hands of Daniel and David that would support the imposition of donee-transferee liability for the gift tax on them under section 6324(b). The evidence bearing on the subject indicates that Circle Bar was on the edge of bankruptcy before the transfer and that it probably remained insolvent after the transfer.

In the bankruptcy proceeding, Woodrow testified that in late 1977 and early 1978, immediately before the transfer, his financial position and that of the Circle Bar were so hopeless that he had tried and failed to sell the property in order to pay the creditors. He had decided simply to turn his property and that of the Circle Bar over to the creditors and walk away. In his words:

---

[8]This limitation under sec. 6324(b) is consistent with the general rule limiting transferee liability to the value of the property received by the transferee. *Phillips v. Commissioner*, 283 U.S. 589 (1931); *United States v. Fernon*, 640 F.2d 609, 611 (5th Cir. 1981); *Nader v. Commissioner*, 323 F.2d 139, 140 (7th Cir. 1963), affg. a Memorandum Opinion of this Court.

I was going to walk away from it, nothing more I could do. The debtors [sic] would have to take it and do what they could with it, get what they could. * * * I fought it as long as I wanted to fight it.

Daniel testified:

My father was tired of fooling with his debts, and his health was bad, and he was going to walk away from it. And me and my brother asked him, you know, to—because he had tried selling it—to let us take over the obligation to try to work it out.

The November 1977 stock transfer and the April 4, 1978, real estate transfers were made to give petitioners an opportunity to attempt to save the family estate through appreciation in the land's value. Both Woodrow and Daniel were of the view that, taking into account all debts, the family's property as a whole had little, if any, net value at that time. The only hope was that the land would appreciate.

The transfer of the Circle Bar stock to Daniel and David and the transfer of the 3,599 acres to Circle Bar were made pursuant to this family arrangement, and the evidence is clear that Circle Bar did not benefit substantially from the transfer. At the time of the transfer, Woodrow and Vella owed large amounts of income taxes, interest, and additions to tax for 1973.[9] In the bankruptcy proceeding, the court allowed the Government's claim against Circle Bar as fraudulent transferee of the 3,599 acres for 1973 income taxes of $403,306.91, pre-petition interest of $289,433.86,[10] and pre-petition penalty of $44,089.97, a total of $736,830.74. Because this fraudulent transferee liability arose as a result of the gratuitous transfer on which the gift tax is based, it diminished the net value of the transfer to Circle Bar and reduced any potential increase in the value of the stock in petitioners' hands.

That is not all. At the time Woodrow and Vella made the transfer, Woodrow and the Circle Bar owed large sums of

[9]Even though Woodrow's and Vella's 1973 income tax liability had not been assessed on Apr. 4, 1978, it was a subsisting liability that they owed and it constituted a potential liability of Circle Bar as transferee. *Scott v. Commissioner*, 117 F.2d 36, 38 (8th Cir. 1941), affg. a Memorandum Opinion of this Court; *Mysse v. Commissioner*, 57 T.C. 680, 701 (1972).

[10]This interest amount includes interest for the period between Apr. 4, 1978, the date of the transfer, and June 23, 1981, the date of the bankruptcy petition. To that extent, the fraudulent transferee liability for interest was not extant on the date of the transfer and may not be taken into account as part of the claim with which the transfer was burdened as of the date of the gift.

money. At the trial in the bankruptcy court, Woodrow testified that he had engaged in substantial farming operations in his individual capacity as well as through Circle Bar. Woodrow testified that he and Circle Bar owed secured debts to four banking institutions and five or six unsecured debts. He was able to list the creditors but could not remember the amounts owed on April 4, 1978. Daniel testified that the secured debts and amounts owed on April 4, 1978, were as follows:

| | |
|---|---|
| Atlantic National Bank of Palatka ........... | $260,000 |
| Merchants and Farmers Bank................ | 230,000 |
| Peoples Bank & Trust Co .................... | 350,000 |
| Century National Bank of Palatka............ | 103,000 |

The unsecured debts totaled approximately $60,000, according to Daniel's testimony. For the same reasons that led the bankruptcy court to sustain fraudulent transferee liability with respect to the Government's 1973 income tax claim, it appears that, insofar as these debts were owed by Woodrow, the banks and other creditors had similar potential fraudulent transferee claims against Circle Bar as of April 4, 1978, the date of the transfer; to the extent the debts were owed by Circle Bar, the transferred property could be reached by its creditors.

Taking into account these items of baggage with which the April 4, 1978, transfer was burdened, and the absence of any precise evidence on Circle Bar's financial condition, we have no basis for finding that the value of petitioners' stock was enhanced to any extent by the transfer. Accordingly, respondent has not carried his burden of proving that petitioners are liable for the gift tax under section 6324(b).

To carry his burden, respondent relies upon a stipulation that the 3,599 acres had a fair market value as of April 4, 1978, of $1,000,400 "without taking into consideration any mortgages which may have been thereon as of April 4, 1978." Throughout their rambling, disjointed presentation at the trial before this Court, petitioners repeatedly insisted that there were "a bunch of encumbrances and mortgages" against the property and that the "figures are in the proceedings of the Bankruptcy Court which have been entered into evidence." We interpret this testimony to refer to the secured bank loans and unsecured debts discussed

above. Respondent counters with the point that the bankruptcy court found that the "net equity conveyed" on April 4, 1978, "had a value of $1,000,400 on that date."[11]

The bankruptcy court's finding of the value of the net equity conveyed, even if accepted by this Court, however, does not cure the defect in respondent's proof. In the bankruptcy court, the Government asserted, in addition to the fraudulent transferee claim for the 1973 income taxes, a secured claim for the unpaid gift tax under the first sentence of section 6324(b). Circle Bar made two basic contentions. First, it contended that no gift had been made because Circle Bar agreed to assume all of Woodrow's and Vella's debts in consideration for the transfer and that those debts approximated $1 million, the approximate value of the 3,599 acres. The bankruptcy court held that the alleged assumption agreement, because of enumerated defects, was legally insufficient to constitute an assumption of the indebtedness and, thus, was not adequate consideration for the transfer to Circle Bar within the meaning of section 2512(b). On that ground, the bankruptcy court rejected Circle Bar's contention.

Second, Circle Bar contended that the property transferred to it was burdened with liens securing the bank loans listed above in a total amount approximating the value of the land, without regard to the Government's allowed fraudulent transferee claim for 1973 income taxes, and that, therefore, no net gift had been made. The bankruptcy court allowed the Government's secured claim in its full amount on the ground that Circle Bar had not shown that the liens encumbered the transferred property.

We are not here dealing with the issues presented in the bankruptcy court. Even if the 3,599 acres of land had a value of $1,000,400 above all liens and to that extent depleted Woodrow's estate (see note 5 *supra*), such evidence does not prove, for the reasons stated above, that the value of petitioners' Circle Bar stock was enhanced. Assuming that a shareholder may be held liable as a gift tax

---

[11]By order dated Feb. 13, 1985, this Court denied a motion for summary judgment filed by respondent in which respondent contended that petitioners should be collaterally estopped from relitigating the "net" fair market value of the land transferred to Circle Bar, citing among other cases *Montana v. United States*, 440 U.S. 147 (1979); *Jack Faucett Associates v. American Tel. & Tel.*, 744 F.2d 118 (D.C. Cir. 1984).

transferee with respect to nonshareholder transfers to his corporation, proving the value of Woodrow's transfer to Circle Bar would be only the first step in discharging respondent's burden. In addition, respondent must show that the transfer enhanced the value of petitioners' stock (and the amount of the enhancement) despite the huge potential transferee liability for the unpaid 1973 income taxes and bank indebtedness. Proof of the value of Woodrow's transfer alone does not show any enhancement in the value of petitioners' stock and, consequently, does not show "the value of the gift to the particular donee sought to be charged." *Want v. Commissioner*, 280 F.2d 777, 781 (2d Cir. 1960), revg. on other grounds 29 T.C. 1223 (1958); *La Fortune v. Commissioner*, 263 F.2d 186, 194 (10th Cir. 1958), affg. 29 T.C. 479 (1957); *Baur v. Commissioner*, 145 F.2d 338, 339 (3d Cir. 1944), affg. 2 T.C. 1016 (1943).

Petitioners are liable as donee-transferees for gift taxes for the period ended June 30, 1978, to the extent of the gifts made to them, personally. Respondent has not shown that petitioners are liable as donee-transferees with respect to the land transferred to Circle Bar.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*