# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-20804

United States Court of Appeals
Fifth Circuit

**FILED**

November 10, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

ELAINE T. MARSHALL, Individually, as Executrix of the Estate of E. Pierce Marshall, as Trustee of the E. Pierce Marshall, Jr. Trust and as Trustee of the Preston Marshall Trust; FINLEY L. HILLIARD, Individually, as former executor of the Estate of James Howard Marshall, II and as former Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust; E. PIERCE MARSHALL, JR., Individually, and as Executor of the Estate of Eleanor Pierce Stevens; PRESTON MARSHALL, Co-Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust,

Defendants–Appellants

Appeals from the United States District Court
for the Southern District of Texas

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

In 1995, J. Howard Marshall, II ("J. Howard") made what the IRS later determined was an indirect gift of Marshall Petroleum, Inc. ("MPI") stock to MPI's other shareholders: (1) Eleanor Pierce (Marshall) Stevens ("Stevens"), J. Howard's former wife, who was the beneficiary of a trust that was funded by MPI stock; (2) E. Pierce Marshall ("E. Pierce"), J. Howard's son; (3) Elaine T. Marshall ("Elaine"), E. Pierce's wife; (4) the Preston Marshall Trust ("Preston

No. 12-20804

Trust"), which had been formed for the benefit of J. Howard's grandson, Preston Marshall; and (5) the E. Pierce Marshall, Jr. Trust ("E. Pierce Jr. Trust"), which had been formed for the benefit of J. Howard's grandson, E. Pierce Marshall, Jr.  At the time that he made this indirect gift, J. Howard did not pay gift taxes.  He passed away shortly after making this gift.

After several years of negotiation over J. Howard's tax liability for this indirect gift, the IRS and J. Howard's Estate entered into a stipulation that determined the value and recipients of the indirect gifts.  J. Howard's Estate still did not pay the gift tax, and, pursuant to I.R.C. § 6324(b), the IRS tried to collect the unpaid gift tax from the donees.  E. Pierce's Estate[1] paid approximately $45 million toward the unpaid gift tax for the benefit of donees E. Pierce, Elaine, the Preston Trust, and the E. Pierce Jr. Trust.  Stevens's Estate[2] has not paid any gift tax because the Estate disputes that Stevens was a beneficiary of the 1995 gift.

In 2010, the Government brought suit against the donees, seeking to recover the unpaid gift taxes and to collect interest from the beneficiaries.  The Government also sought to recover from two individuals—E. Pierce Marshall, Jr. ("E. Pierce Jr.") and Finley L. Hilliard ("Hilliard")—who, as representatives of various estates and trusts, allegedly paid other debts before paying those owed to the Government.  In a series of orders issued in 2012, the district court found: (1) the donees' debt under § 6324(b) was a liability independent from that of the donor's unpaid gift tax, and the donees had incurred interest on that independent liability; (2) Stevens was a donee of J. Howard's indirect gift; (3) Hilliard and E. Pierce Jr. were individually liable for several of the debts

---

[1] E. Pierce passed away in 2006.

[2] Stevens passed away in 2007.

2

No. 12-20804

they paid as executors and trustees before they paid the debt owed to the Government.

On appeal, the Appellants argue the district court erred in each of those rulings. We affirm in part and reverse and render in part.

## I. BACKGROUND

### A. Legal Background

The Internal Revenue Code imposes a tax on a "transfer of property by gift." I.R.C. § 2501(a)(1). Subject to a few exceptions not presented in this case, this gift tax applies "whether the gift is direct or indirect," and includes transfers of property (like stock) when the transfer was "not made for an adequate and full consideration." I.R.C. § 2511(a); *see* Treas. Reg. § 25.2511-1(h). When the gift tax is not paid when it is due, the Internal Revenue Code imposes interest on the amount of underpayment. I.R.C. § 6601(a).

"The donor, as the party who makes the gift, bears the primary responsibility for paying the gift tax." *United States v. Davenport*, 484 F.3d 321, 325 (5th Cir. 2007) (citing I.R.C. § 2502(c)). If the donor fails to pay the gift tax when it becomes due, the Internal Revenue Code provides the donee becomes "personally liable for such tax to the extent of the value of such gift." I.R.C. § 6324(b). The term tax includes interest and penalties, and so the donee can be held liable for the interest and penalties for which the donor is liable. *See* Treas. Reg. § 301.6201-1(a); 14 *Mertens Law of Federal Income Taxation* § 53:41 (2014). Donee liability is several, meaning that the donee can be held liable for the full amount of the gift tax that the donor owes, "regardless of what portion [of the gift the particular donee] may have received of the total amount distributed," subject to the cap in § 6324(b). 14 *Mertens Law of Federal Income Taxation* § 53:42.

The Government has two means of collecting an unpaid gift tax: (1) it can bring a court proceeding against the donee, and (2) it can initiate a

3

procedure under I.R.C. § 6901. *See* I.R.C. §§ 6901, 7402. Section 6901 specifies that donee liability is "subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred." I.R.C. § 6901(a).

## B. Factual Background

### 1. The gift

In 1995, J. Howard sold his stock in MPI back to the company. Because he sold the stock back for a price below its fair market value, this sale increased the value of the stock of the remaining stockholders. At the time of the sale, there were five other individuals and trusts that held MPI stock, including E. Pierce, Elaine, the Preston Trust, and the E. Pierce Jr. Trust.

The fifth stockholder of MPI stock at the time was a Grantor Retained Income Trust ("GRIT"), which paid income to Stevens. As part of her divorce settlement with J. Howard, Stevens received shares of MPI stock. In 1984, Stevens transferred all of her shares of MPI to the Eleanor Pierce (Marshall) Stevens Living Trust ("Living Trust"), and a few years later, the Living Trust split those shares into four trusts. Slightly more than half of the shares were transferred into three Charitable Remainder Annuity Trusts ("CRATs"), and the remaining shares were put into the GRIT. The GRIT was designed to pay income to Stevens for ten years and then terminate, with E. Pierce as the remainder beneficiary. When the MPI shares were transferred to the three CRATs and the GRIT, the shares were cancelled and then reissued in the name of the four trusts.[3]

---

[3] In 1989, well before J. Howard sold all of his shares of MPI stock back to the company, the three CRATs all sold their shares of MPI back to MPI. Thus, only the GRIT, not the CRATs, had MPI stock at the time of J. Howard's indirect gift, and so the CRATs are not part of this suit.

No. 12-20804

2.  The donor and gift tax

The IRS audited J. Howard's 1992 through 1995 gift taxes.  The IRS determined that J. Howard had made an indirect gift to the MPI shareholders when he sold his stock back for below market value and sent notice of deficiency.  J. Howard's Estate[4] challenged the deficiencies.  After years of back-and-forth negotiation, in 2002 J. Howard's Estate and the IRS entered into a stipulation ("the Stipulation") regarding J. Howard's Estate's tax liability.  The Stipulation provided that, in 1995, J. Howard made indirect gifts to the following people in the following amounts: (1) E. Pierce—$43,768,091, (2) Stevens—$35,939,316, (3) Elaine—$1,104,165, (4) the Preston Trust—$1,104,165, and (5) the E. Pierce Jr. Trust—$1,104,165.  In 2008, the United States Tax Court issued decisions ("2008 Tax Court decisions") finding, *inter alia*, deficiencies in J. Howard's 1995 gift taxes.  J. Howard's Estate never paid the assessed taxes.

3.  The donees and gift tax

When Stevens passed away in 2007, E. Pierce Jr. became the executor of her estate, and Hilliard was the trustee for the Living Trust.  E. Pierce Jr. and Hilliard were both aware that Stevens's Estate and the Living Trust could be held liable for the unpaid gift tax.  Before paying anything toward the unpaid gift tax, E. Pierce Jr. made distributions of personal property from Stevens's Estate, and he also paid rent on Stevens's apartment for one year.  Hilliard used funds from the Living Trust to pay accounting and legal fees for charitable organizations other than the Living Trust.  Hilliard and E. Pierce Jr. also filed joint tax returns for the Living Trust and Stevens's Estate and permanently set aside $1,119,127 of the Living Trust's funds for charitable purposes.

---

[4] J. Howard passed away in 1995.

5

No. 12-20804

In 2008, the IRS assessed gift tax liability for the unpaid donor gift tax against the donees pursuant to I.R.C. § 6324(b).  In May and June 2010, E. Pierce's Estate paid the IRS an amount equal to the value of the gift received for E. Pierce, Elaine, the E. Pierce Jr. Trust, and the Preston Trust.  Steven's Estate, on the other hand, has not paid the IRS anything towards the unpaid gift tax.

## C. Procedural Background

### 1. Government's lawsuit

On August 6, 2010, the Government sued the E. Pierce Estate, Elaine, the E. Pierce Jr. Trust, the Preston Trust, and Stevens's Estate as donees of J. Howard's 1995 indirect gift.  The Government also brought claims against both E. Pierce Jr. and Hilliard under 31 U.S.C. § 3713, the Federal Priority Statute, alleging that they had made distributions from Stevens's Estate and the Living Trust before paying debts owed to the Government.  The Appellants filed motions for summary judgment, and the Government filed cross-motions for summary judgment against each of the Appellants.

### 2. March 28, 2012 Order

Stevens moved for summary judgment, arguing that she was not the donee of J. Howard's 1995 gift because she did not personally own any MPI stock at the time of the gift.  She argued that the GRIT was the donee of the gift and, therefore, liable for any gift tax.  In the alternative, she argued that the remainder beneficiary (E. Pierce), not the income beneficiary (Stevens), was the donee of the gift.  Finally, she argued that Kansas law applied and that, under Kansas law, the increased value of the MPI stock would be allocated to the corpus (and thus would inure to the remainder beneficiary) instead of the income.  The Government filed a cross-motion for summary judgment, arguing that the Stipulation and the 2008 Tax Court decisions

6

barred Stevens from "litigating the fact of the gifts, the identity of the donees, and the amount of the gifts."

In the March 28, 2012 Order, the district court held that Stevens was the donee of J. Howard's 1995 gift.  The court looked to *Helvering v. Hutchings*, 312 U.S. 393 (1941), where the Supreme Court held that gifts to a trust were gifts to the trust beneficiaries and that the trust beneficiaries were eligible for a gift tax exclusion under I.R.C. § 2503(b).  Based on that holding, the district court saw no reason why the definition of donee for purposes of the gift tax exclusion would be different than the definition of donee for the purposes of donee gift tax liability.

The district court also rejected Stevens's argument that the remainder beneficiary should be considered the donee for purposes of gift tax liability.  Citing *Ryerson v. United States*, 312 U.S. 405 (1941) and *United States v. Pelzer*, 312 U.S. 399 (1941), the district court noted that "the donee for the purposes of a gift tax exclusion must hold a present interest in and right of enjoyment of the gift," and found that Stevens as the income beneficiary, not the remainder beneficiary, had the present interest and right of enjoyment of the gift when it was made.  Finally, the court found that the Kansas definition of income and principal would only apply if the trust document was ambiguous.  Because the trust document was unambiguous and because Stevens met the definition of a donee under *Helvering*, Stevens was the donee of J. Howard's 1995 gift.

3.  <u>June 7, 2012 Order</u>

The Government also filed a motion for partial summary judgment for donee liability against Elaine in her individual capacity, as executrix of E. Pierce's Estate, as trustee of the Preston Trust, and as trustee of the E. Pierce Jr. Trust.  The Government argued that it could "charge interest pursuant to I.R.C. §§ 6601 and 6621 on the unpaid donee liability created by § 6324(b)."

The Government claimed that there were two separate obligations: the obligation of the donor and the obligation of the donee.  Section 6324(b), according to the Government, only limited the obligation of the donor, and so the donee's liability for the unpaid gift tax was not capped under § 6324(b). Elaine filed a cross-motion for summary judgment, arguing that the plain language of § 6324(b) capped all donee liability at the value of the gift received, and so the donees could not incur unlimited interest on any separate donee liability.

The district court agreed with the Government and found that (1) the donees had an independent liability under § 6324(b) that was not capped at the value of the gift and (2) this independent liability was subject to interest under § 6601.  The court noted that the Fifth Circuit had not yet spoken on the issues this case raised.  Thus, it looked to three circuit court opinions that had addressed the issue: *Baptiste v. Commissioner* (*Baptiste 11*), 29 F.3d 1533 (11th Cir. 1994), *Baptiste v. Commissioner* (*Baptiste 8*), 29 F.3d 433 (8th Cir. 1994), and *Poinier v. Commissioner*, 858 F.2d 917 (3d Cir. 1988).

The district court explained several reasons for its finding.  First, the district court disagreed that the language of § 6324(b) unambiguously limited all donee liability.  Second, the court found that "[j]ust as there are two parties to a gift—the donor and the donee, there are two different possible deficiencies—that of the donor and that of the donee."  While the donor's obligation falls under chapter 12 liability, the donee has liability under I.R.C. § 6601 for interest for use of the government's money.  The district court found that "[d]onee liability is not a tax" and could not be collected as such; instead, the Government had to obtain a personal judgment against a donee or make an assessment under § 6901.  The donor's gift tax and the donee's liability were both subject to interest under §§ 6601 and 6620, which, the court reasoned, made sense: "The interest is charged based on the failure of the donee to pay,

not the donor. It was equitable to cap the donee's responsibility for the actions of another, but if he chooses not to pay his own liability that is a different matter." Additionally, he district court declined to follow the Third Circuit's reasoning in *Poinier* because "the Third Circuit's strongest argument—that § 6601(f) expressly forbids paying interest on interest—is no longer valid" because Congress removed that provision. Finally, *Baptiste 11* persuaded the district court, because, under Fifth Circuit precedent discussing § 311 (the predecessor to § 6901), this Court had "allowed the assessment of interest on a transferee's liability." Thus, the district court found that the donees were liable to the Government for interest on their independent liability for the unpaid gift tax.

4. June 25, 2012 Order

Finally, the Government moved for summary judgment against E. Pierce Jr. and Hilliard for violations of 31 U.S.C. § 3713, the Federal Priority Statute, and against E. Pierce Jr. for breach of state law fiduciary duties. The court granted the motion and found E. Pierce Jr. and Hilliard (1) individually liable for money they had distributed from Stevens's Estate and the Living Trust, respectively, in violation of 31 U.S.C. § 3713 and (2) jointly liable for money they set aside for charitable purposes in violation of the government's priority under § 3713.

The main issue before the district court was whether E. Pierce Jr. and Hilliard had knowledge of the Government's claim against Stevens's Estate. The district court explained that "the knowledge requirement is not actual knowledge" and that the requirement could be satisfied with a showing that E. Pierce Jr. and Hilliard had "'notice of such facts as would put a reasonably prudent person on inquiry as to the existence of the unpaid claim.'" The court noted that both E. Pierce Jr. and Hilliard admitted they were told that the

Government might assert a claim for the unpaid gift tax against Stevens's Estate.

After determining that E. Pierce Jr. and Hilliard met the test in 31 U.S.C. § 3713 for individual liability, the court then set out to calculate their liability. It found that "the government has priority over debts of the decedent but not of the estate," and then applied Texas law to determine which category the debts E. Pierce Jr. and Hilliard paid fell into. The court found E. Pierce Jr. individually liable for distributing Stevens's personal property and for causing the Living Trust to pay rent on Stevens's apartment. The court found Hilliard individually liable for paying accounting and legal services out of the Living Trust for other charitable organizations. The district court also found Hilliard and E. Pierce Jr. jointly liable for the $1,119,127 they had set aside in the Living Trust for charitable purposes, for which they claimed charitable deductions. Finally, the district court concluded that E. Pierce Jr.'s personal liability under § 3713 was "coterminous" with his failure to pay taxes on behalf of Stevens's Estate in the order and manner they were due, and thus, he had breached his fiduciary duties under state law.

All Appellants timely appealed.

## II. JURISDICTION

The district court had jurisdiction under I.R.C. §§ 7402 and 7403 and 28 U.S.C. §§ 1340 and 1345. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III. STANDARD OF REVIEW

This Court reviews a grant of summary judgment de novo. *Kimbell v. United States*, 371 F.3d 257, 260 (5th Cir. 2004). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## IV. DISCUSSION

All Appellants argue that the district court erred in finding that the donees incurred an independent interest liability as a result of the donor's unpaid gift tax. Stevens also argues that the district court was incorrect in finding that she was a donee. Finally, Hilliard and E. Pierce Jr. claim that the district court erred when it held them responsible, as fiduciaries and individually, for distributions they made from the Living Trust and Stevens's Estate. We address each issue in turn.

### A. Independent Donee Unpaid Gift Tax Liability and Interest

Under the Internal Revenue Code, the federal government can establish a lien for unpaid gift tax:

> Except as otherwise provided in subsection (c), unless the gift tax imposed by chapter 12 is sooner paid in full or becomes unenforceable by reason of lapse of time, such tax shall be a lien upon all gifts made during the period for which the return was filed, for 10 years from the date the gifts are made. If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift.

I.R.C. § 6324(b). All Appellants argue that the district court erred when it found both that this creates an independent liability on the part of the donee to pay the unpaid gift tax and that the donee can be charged interest until the gift tax is paid. First, they argue that the district court's interpretation of § 6324(b) directly contradicts the plain language of the statute. Second, the Appellants argue that the district court erred in applying I.R.C. § 6901; specifically, they argue that because the Government did not assess transferee liability under § 6901 but instead chose to seek a personal judgment against

the donees, § 6901 is irrelevant in this case.  Finally, they claim that even if § 6901 applies, the district court's interpretation of § 6324(b) is incorrect for several reasons.  For the reasons that follow, we disagree with each of these arguments and hold that interest accrues on donee's liability for the unpaid gift taxes and that interest is not limited to the extent of the value of the gift.

1.  The plain language of § 6324(b)

The Appellants argue that the language of § 6324(b) is clear on its face: "It imposes only a single liability on donees for the donor's tax and interest." The statutory language includes no exceptions, and, considering the exceptions written into other parts of the Internal Revenue Code, they point out that if Congress had intended to provide an exception, it knew how to include one. The Appellants also argue that both *Poinier* and *Baptiste 8* held that the plain language of § 6324(b) resolved this question, and they urge this Court to follow those circuits.

The Government responds that there are two distinct liabilities at issue in this case: the donor's liability and the donee's liability.  The Government argues that to understand the donee's liability for the unpaid gift tax, the Court must look beyond § 6324(b) and read it in conjunction with §§ 6601 and 6901. According to the Government's reading of the statutes, "§ 6901 provides that the amount of a donee's personal liability under . . . § 6324(b) is subject to the same provisions as the gift tax that gave rise to such liability," such as the interest provisions in § 6601.

We agree with the Government that the plain language of § 6324(b) does not resolve this issue.  First, based on our reading of the plain language of the statute, the liability limitation applies to the donor's unpaid gift tax. *See* I.R.C. § 6324(b) (explaining that, when the donor's gift tax is unpaid when due, a donee is personally liable for "*such tax* to the extent of the value of the gift" (emphasis added)).  Section 6324(b), however, says nothing about any limit on

the donee's liability and the Government's ability to assess interest when the donee fails to fulfill his or her obligation to pay the donor's unpaid gift tax. Further, the district court was correct to read several other portions of the Internal Revenue Code together in reaching its conclusion. Because statutes dealing with the same subject should be read together and "harmonized, if possible," we should not resolve this question without looking beyond § 6324(b) and attempting to harmonize it with other provisions of the Internal Revenue Code. *See Panama Canal Co. v. Anderson*, 312 F.2d 98, 100 (5th Cir. 1963).

While the Appellants are correct that the Third Circuit observed in *Poinier* that applying the § 6324(b) cap to limit the donee's liability was "consistent with the plain language of section 6324(b)," *Poinier*, 858 F.2d at 920, we disagree that the court resolved the case solely based on the plain language of § 6324(b). The Third Circuit still conducted an extensive analysis of the statute's legislative history, compared the case to decisions from other circuits, and examined the policy implications of its decision before reaching its holding. *See id.* at 920–23. Thus, even the *Poinier* court did not rely solely on the plain language of the statute in order to resolve the case.

Finally, other courts that have considered this issue have read § 6324(b) and concluded that a donee incurs an independent liability that is subject to unlimited interest until paid. *See Baptiste 11*, 29 F.3d at 1541–1543; *Baptiste v. Comm'r* (*Baptiste TC*), 100 T.C. 252, 257 (1993). These divergent interpretations of § 6324(b) suggest that § 6324(b) is not plain on its face in the way that the Appellants claim. Thus, we conclude the plain language of the statute does not resolve the case.

2. Section 6901 and its implications for this case

The Appellants next argue that the district court erred in looking to *Baptiste 11* and § 6901 to help resolve this case, because the Government chose to collect the gift taxes from the donees through a personal action, not under

§ 6901.  They argue that collection under § 6901 includes certain procedural safeguards, which they were deprived of when Government chose not to collect through § 6901.  Though the Appellants agree that the Government may use whatever method it chooses to collect taxes, they claim the Government is improperly attempting to use one method to collect taxes—a direct judgment under § 7402—while taking advantage of § 6901.

The Government rejects the idea that § 6901 is irrelevant to this case simply because it chose to collect the unpaid tax through a direct judgment instead of using the § 6901 procedures.  The Government claims § 6901 shows Congress intended for the IRS to be able to collect interest on the donee's unpaid, personal liability under § 6324(b).  According to the Government, this congressional intent should guide our decision, regardless of whether the Government collects the tax under § 7402 or § 6901.  Finally, the Government disputes the Appellants' allegation that they were denied procedural safeguards available under § 6901 because (1) the Appellants were allowed to have their donee liabilities determined without having to first pay the tax, and (2) the outcome in the district court was the same as it would have been in tax court because of the tax court's decision in *Baptiste TC*.

We conclude the district court did not err in relying on § 6901 to help interpret § 6324(b), even though the Government chose to attempt to collect from the Appellants through a personal action, not under § 6901.  The Internal Revenue Code gives district courts jurisdiction to render judgments to enforce internal revenue laws, and the statute specifies that the remedies are "in addition to and not exclusive of any and all other remedies of the United States."  I.R.C. § 7402(a).  Further, nothing in § 6901—which says that transferee liability is "subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred"—imposes that liability *only* when the Government collects under § 6901.  *Cf. United*

*States v. Russell*, 461 F.2d 605, 606 (10th Cir. 1972) (holding that "the collection procedures contained in § 6901 are not exclusive and mandatory, but are cumulative and alternative to the other methods of tax collection recognized and used prior to the enactment of § 6901 and its statutory predecessors"); *see also United States v. Geniviva*, 16 F.3d 522, 525 (3d Cir. 1994) (holding that "an individual assessment under [§ 6901] is not a prerequisite to an action to impose transferee liability under [§ 6324(a)(2)]").[5]

This Court also disagrees that *Baptiste 11* is as easily distinguishable as the Appellants argue, merely because the Government used a different means of collecting the unpaid gift tax in this case. The holding in *Baptiste 11*—that § 6324(b) imposes an independent liability on a donee that is subject to unlimited interest—does not rely on the fact that the Government was collecting the tax under § 6901. 29 F.3d at 1541. The Eleventh Circuit's holding also does not rely on the fact that the donees had access to § 6901's procedural safeguards, which the Appellants claim they were denied in the instant case. Rather, the Eleventh Circuit read the statutes together with the interest provision in § 6601 to determine the nature and extent of the donee's obligation, *id.*, and there is nothing in the Eleventh Circuit's reasoning that would apply only when the Government collected from a donee under § 6901.

Finally, we note that it would be possible to hold that under § 6324(b) the donees have a personal liability, which accrues interest that is not limited by § 6324(b), even without relying on § 6901. In *Baptiste TC*, the majority of the Tax Court reached this conclusion without ever mentioning § 6901. *See* 100 T.C. at 252–57. One of the concurring opinions in the same decision also

---

[5] I.R.C. § 6324(a)(2) imposes personal liability on transferees for unpaid estate taxes. Because the gift tax and estate tax provisions are *in pari materia* and should be construed together, *see Estate of Sanford v. Comm'r*, 308 U.S. 39, 44 (1939), we look to cases construing estate tax transferee liability to help us in resolving this case.

concluded that the transferees' personal liability to pay the gift tax was subject to unlimited interest without relying on § 6901. *See id.* at 258–60 (Ruwe, J., concurring).

3. The correct interpretation of § 6324(b)

Finally, the Appellants claim that the district court misinterpreted § 6324(b) in several ways. First, they argue that § 6901 is only a procedural statute that does not create substantive liability, *see Comm'r v. Stern*, 357 U.S. 39, 42–44 (1958), so the donee's personal liability that incurs interest must come from a statute other than § 6901. Next, the Appellants claim that the district court's interpretation of § 6324(b) was improper because it allows the Government to collect double interest, something Congress did not intend. The Appellants then look to legislative history, which they argue shows no intent to impose unlimited interest on transferees. Finally, they again argue that the plain language of § 6324(b) is clear, and, as such, policy considerations cannot sway this Court's holding.

The Government responds that read together, §§ 6324(b), 6601, and 6901 impose interest on the donee's liability from the date that the donor's gift tax becomes overdue. The Government also disagrees that the legislative history favors the Appellants' arguments and instead claims that the legislative history actually shows congressional intent to "expand the Government's right to interest." Finally, the Government claims that general taxation principles and other policy considerations compel the result the district court reached in this case.

After carefully considering the arguments on each side, we hold that the district court correctly interpreted § 6324(b). While the Appellants are correct that *Stern* says § 6901 does not create substantive liability, *see Stern*, 357 U.S. at 42–44, our holding does not run afoul of that rule. The substantive liability in this case comes from § 6324(b), and § 6901 and § 6601 help explain the

nature of that obligation.  Section 6901 explains that transferee liability imposed under § 6324(b) is "subject to the same provisions" as the underlying gift tax.  I.R.C. § 6901(a).  One of those provisions that the underlying gift tax is subject to is § 6601, which imposes interest when the tax is unpaid.  I.R.C. § 6601.  Thus, read together, these sections explain that the donee's personal, independent liability for the unpaid gift tax is subject to the interest provisions of § 6601.[6]

Though both the Appellants and the Government claim the legislative history supports their position, our reading of the legislative history comports with the Government's view.  As Judge Halpern explained in his concurring opinion in *Baptiste TC*, *see* 100 T.C. at 264–67 (Halpern, J., concurring), § 311 (the precursor to § 6901) in the 1939 Code provided that the Government could apply the interest provisions to transferee liability; when Congress enacted § 6901 in 1954, it removed the interest provision but gave no other indication that it intended to depart from § 311 under the 1939 Code.  *Id.* at 264–66.  Judge Halpern offered two alternative explanations for the differences between the 1939 and 1954 Internal Revenue Code:

> First, Congress may have intended to continue the general rule that respondent would be entitled to appropriate interest on transferee liability (as if it were tax liability), but determined that interest more appropriately should be payable from (generally) the time of the transfer rather than the time of notice and demand. Second, Congress may have intended to abandon the general rule that respondent was entitled to interest on transferee liability as on tax liability.
>
> Congress made no announcement of a drastic change, in this regard, from the 1939 scheme, and I therefore conclude that

---

[6] The dissent characterizes this as "circular reasoning." *Post* at 44.  Circular reasoning occurs only if the conclusion to be proven is included in the premises.  Here the premises follow from case law principles of statutory interpretation and they do not mention, let alone include, the ultimate conclusion that the statutory text does not resolve the issue *sub judice*.

whichever interpretation of section 6901 is most consistent with the preceding scheme is the better. As suggested above, I believe Congress would have considered the fundamental characteristic of the 1939 scheme to be that transferee liability is treated like tax liability for the purpose of [the Government's] entitlement to appropriate interest thereon.

*Id.* at 266–67.  Thus, Judge Halpern concluded, "section 6901 entitles [the Government] to interest on the transferee liability, as if it were tax liability, under section 6601." *Id.* at 267.  Like the Eleventh Circuit, we find this interpretation of the legislative history persuasive and use it to inform our decision that the Government may collect unlimited interest on a donee's personal liability for any unpaid gift tax. *See Baptiste 11*, 29 F.3d at 1542 n.7.

We are also unpersuaded by concerns about double collection of interest that the Appellants urged before this Court and that influenced the Third Circuit's decision in *Poinier*.  The Appellants claim that the district court's interpretation allows a double interest charge because the donee must pay both the interest that the donor would have been charged on the unpaid gift tax and the interest on the donee's own independent liability for paying the gift tax. The *Poinier* court's double interest concerns were motivated by an older version of the Internal Revenue Code, which provided in I.R.C. § 6601(f)(2) that "[n]o interest under this section shall be imposed on the interest provided by this section." *See Poinier*, 858 F.2d at 921–22.  But Congress repealed § 6601(f)(2), and there is no longer a specific prohibition on collecting interest on the interest assessed under § 6601.  The Internal Revenue Code also now specifically allows for compound interest. *See* I.R.C. § 6622.  Contrary to the Appellants' position, it appears that Congress is not concerned with the possibility of collecting interest on interest, and so that consideration does not influence our decision.

No. 12-20804

Finally, our decision here is consistent with Fifth Circuit precedent and best serves the principles and policies this Court and others have recognized in interpreting the Internal Revenue Code. We have previously observed that it is unlikely that Congress intended that the accrual of interest be treated differently in tax underpayment and tax overpayment cases. *See Dresser Indus., Inc. v. United States*, 238 F.3d 603, 616 (5th Cir. 2001). If the Appellants had overpaid the amount they owed in gift taxes, the Government would have been required to pay back the overpayment with interest. *See* I.R.C. § 6611. Holding the Appellants liable for unlimited interest on their personal liability for the unpaid gift tax treats interest for overpayment and underpayment the same. Further, when we considered former §§ 294 and 311 (the predecessors to §§ 6601 and 6901), this Court held that the Government could collect interest on the transferee's liability for the transferor's unpaid taxes, *see Patterson v. Sims*, 281 F.2d 577, 578–79, 581 (5th Cir. 1960), and our decision today follows naturally from that holding.[7]

Moreover, our conclusion today is consistent with "the traditional rule that one who possesses funds of the government must pay interest for the period that person enjoys the benefit of [the] same." *See Baptiste 11*, 29 F.3d at 1542; *Baptiste TC*, 100 T.C. at 259 (Ruwe, J., concurring) ("Were we to adopt petitioners' view of the liability limitation . . . we would be radically changing

---

[7] *Patterson* concerned "the extent of the liability for interest of a transferee of property of a delinquent income taxpayer," 281 F.2d at 578, unlike this case which concerns the liability for interest of a donee of a gift of a donor who was delinquent in paying gift tax. Of course, the existence and extent of income tax transferee liability is determined under state law, *see Stern*, 357 U.S. at 44–45, unlike gift tax transferee liability which is determined under federal law. But, state law did not determine our decision in *Patterson*; rather, we concluded that once the IRS sent the transferee a notice of deficiency, the question of transferee liability—and the interest chargeable thereon—became a question of federal law. *Patterson*, 281 F.2d at 580 ("State law is therefore not a determinant of transferee liability subsequent to the notice of the transferee assessment under Section 311. Rather, Section 294(b), Internal Revenue Code 1939, furnishes the applicable rule."). So *Patterson* provides useful guidance even though it dealt with unpaid income taxes, not gift taxes.

the concept of limited transferee liability . . . .").  Finally, our decision encourages transferees to fulfill their obligation to pay any unpaid gift taxes in a timely manner, rather than "reward[ing] those who delay in paying their obligations."  *Baptiste TC*, 100 T.C. at 259 (Ruwe, J., concurring).  As the Eleventh Circuit opined, "[t]o hold otherwise would create a system which encourages transferees to retain assets of the estate, at the expense of the government, for as long as possible with no adverse consequences."  *Baptiste 11*, 29 F.3d at 1542–43 n.9.[8]  Thus, we conclude the district court did not err in its interpretation of § 6324(b).

## B.  Stevens as Donee of J. Howard's Indirect Gift

Stevens argues that the district court erred in finding that she was a donee of J. Howard's 1995 indirect gift.  First, she claims that res judicata—because of the Stipulation and the 2008 Tax Court decisions—does not bar her from contesting her status as a donee or the amount of the gift.  Second, Stevens presents several alternative explanations for why she is not the donee.  We consider each of these in turn.

### 1.  Whether res judicata applies

We must find four requirements satisfied in order for res judicata to apply: "(1) the parties must be identical in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases."  *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1265 (5th Cir. 1990) (citations omitted).

---

[8] The dissent is correct to note that "the sooner that a donee pays the gift tax, the less interest that will be owed."  *Post* at 43.  But it acknowledges that this is only true "until the initial tax plus accrued interest equals the value of the gift to the donee."  Thus, once the sum of the tax and accrued interest surpasses the value of the gift, as is the case here, the parties have no incentive to pay what they owe.

No. 12-20804

Stevens claims that several of those requirements are not satisfied, and so the Stipulation and 2008 Tax Court decisions do not bind her. First, she argues that the parties are not identical. While acknowledging the exception to the identical party requirement if the non-party is a successor in interest to the party's interest in the property, *see Meza*, 908 F.2d at 1266–67, she claims this exception cannot apply here because whether she is a successor in interest to J. Howard (i.e., whether she was a donee) is the same issue she is contesting. Stevens also claims that there was not a final judgment on the merits, because "an agreed judgment does not have the same effect as a contested judgment." (citing *Arizona v. California*, 530 U.S. 392, 414–16 (2000)). The Government, however, responds that our decision in *United States v. Davenport*, 484 F.3d 321 (5th Cir. 2007) controls. Because "[a] prior decision determining the liability of the donor binds the donee," *Davenport*, 484 F.3d at 327, the Government claims that the Stipulation and 2008 Tax Court decisions bind Stevens.

We agree with Stevens that, in order for *Davenport* (and res judicata) to apply, we must first determine whether Stevens is a donee. In *Davenport*, this Court considered whether res judicata bound a transferee, Gordon Davenport, from whom the Government sought to recover unpaid gift tax (under § 6324(b)). *Id.* at 322, 324. Before her death, Birnie Davenport transferred stock to her niece and nephews, including Gordon. *Id.* at 323. After Birnie's death, the IRS audited her estate tax return and found that Birnie had undervalued the stock she transferred, creating a large gift tax deficiency. *Id.* at 324. Birnie's estate challenged the alleged deficiency in tax court. *Id.* The tax court found that Birnie had made *inter vivos* gifts to Gordon and her other nephew and niece, and the court determined the value of the gift. *Id.* Her estate never paid the gift tax, and the Government then sought to collect the unpaid gift tax from Gordon pursuant to § 6324(b). *Id.* at 324–25 (explaining that liability under

21

§ 6324(b) is several).  The district court agreed with Gordon that res judicata applied to the tax court's finding that he was a donee but did not preclude him from litigating the value of the gift or the amount of his liability.  *Id.* at 325.

This Court reversed, holding that res judicata applied and that Gordon could not contest his status as a donee, the value of his gift, or the amount of his liability.  *Id.* at 329.  The Court noted that "[a]s transferee, Gordon Davenport was in privity with a party to the tax court proceeding, Birnie Davenport's estate, the transferor."  *Id.* at 326 (citation omitted).  "A prior decision determining the liability of the donor binds the donee, . . . [a]nd the tax court, a court of competent jurisdiction, rendered final judgment on the merits."  *Id.* at 327 (citation omitted).  The "same . . . transactions and factual events" were present in both cases; both cases concerned Birnie's gift.  *Id.*  The Court also observed that its decision was consistent with the Eighth and Eleventh Circuits' decisions in the *Baptiste* cases.  *Id.* at 327–28.  In each *Baptiste* case, the court reasoned that the estate's liability, which the tax court had already calculated, determined the donee's liability under § 6324(b) and held that the donees could not challenge the amount of the gift.  *Id.* at 327.

Despite our holding in *Davenport*, res judicata does not attach until we determine that Stevens is, in fact, a donee.  "Once a court determines the tax liability of the transferor, 'the decision is res judicata of the liability with regard to the transferee for the same tax *if transferee status can be established.*'"  *Id.* at 328 (emphasis added) (quoting 14 Edward J. Smith, *Mertens Law of Federal Income Taxation* § 53:31 (2004)).  Thus, determining transferee (or donee) status is the first step.  Here, Stevens challenges her status as a donee, and so the requirements for res judicata are not satisfied until we determine that she was a donee.

If we determine that Stevens is a donee, *see infra* Part IV(B)(2), then *Davenport* is clear that Stevens is bound by the tax court's determination of

the value of the gift. *See id.* (explaining that determining the value of the stock was "a fundamental part of calculating the tax due" and that "[t]he tax court's determinations of the value of the stock and the tax due are not separable"). Stevens's argument that there was no final judgment on the merits because it was an agreed, not a contested, judgment lack merit. *Davenport* clearly states that "[t]he final judgment element does not require contested litigation." *Id.* at 327 n.10 (citing *United States v. Shanbaum*, 10 F.3d 305, 313 (5th Cir. 1994) and *In re W. Tex. Mktg. Corp.*, 12 F.3d 497, 500–01 (5th Cir. 1994)). Thus, res judicata does not bar Stevens from arguing that she is not a donee. But, if we determine that Stevens is a donee, then res judicata applies and bars her from religitating the value of the gift she received.

2. <u>Whether Stevens was the donee</u>

Stevens next claims that she is not the donee for several reasons. First, she argues that the GRIT was not even the donee of J. Howard's gift because it did not receive a present interest in property when J. Howard sold his MPI stock back to MPI. Second, she argues that the trust was the donee and so the trustee is the proper party to be held liable under § 6324(b). In the alternative, Stevens claims that the remainder beneficiary is the donee, or, at the very least, partly responsible for any donee liability. Finally, Stevens argues that even if the trust, the trustee, and the remainder beneficiaries are not the donees, the Government still has failed to prove that J. Howard made a gift to her because J. Howard's sale of MPI was "an arm's length transaction in the ordinary course of business" and free from donative intent.

*i. Present interest in property from J. Howard's indirect gift*

Stevens argues that, when J. Howard made his indirect gift, the GRIT did not receive a present interest in property because the GRIT, a minority shareholder, could not access the increased value of the shares. Because the shareholder has no individual control over the gift of increased value in his

shares, Stevens claims that there is a "postponement of enjoyment" that makes the gift a gift of future interests.  Citing *Tilton v. Commissioner*, 88 T.C. 590 (1987), she asserts that, until the district court's opinion in this case, "[n]o court appears to have held a shareholder liable as a transferee for the unpaid gift taxes incurred on a transfer to the corporation."  Stevens urges this Court to look to *Fidelity Trust Company v. Commissioner*, 141 F.2d 54 (3d Cir. 1944), where, according to Stevens, the Third Circuit considered a situation similar to this one and held that the life insurance beneficiaries were not liable for unpaid gift taxes under § 6324(b) because the gift was of a future interest.

The Government responds that Stevens received a present interest.  Pointing to Treasury Regulation § 25.2511-1(h)(1) and *Kincaid v. United States*, 682 F.2d 1220, 1224 (5th Cir. 1982), the Government also claims that "[i]t is well-settled that a transfer of property to a corporation for less than adequate consideration is to be treated as a gift to the shareholders to the extent of their proportionate interests in the corporation."  The Government also rejects Stevens's reliance on *Fidelity Trust* and argues that it is distinguishable from this case.

We hold that J. Howard's indirect gift was a transfer of a present interest.  It is clear under our holding in *Kincaid* and the Treasury Regulations that a shareholder's transfer of property to a corporation for less than full consideration is generally considered a gift to the individual shareholders.  *See Kincaid*, 682 F.2d at 1223–25 (applying Treas. Reg. § 25.2511-1(h)(1) and concluding that, when Kincaid transferred property to a corporation she formed with her two sons, she made a gift to her sons as shareholders of the corporation's stock); Treas. Reg. § 25.2511-1(h)(1) ("A transfer of property by B to a corporation generally represents gifts by B to the other individual shareholders of the corporation to the extent of their proportionate interests in the corporation.").  That is exactly what happened here, and there is nothing

in the Treasury Regulations or *Kincaid* to suggest that the rule is somehow different for a minority shareholder.

We also disagree with Stevens that *Tilton* should lead us to a different result. First, *Tilton* does not state exactly what Stevens claims; instead, the tax court said "[w]e have been unable to locate, and respondent has not cited, any case in which a shareholder of a corporation was charged with donee-transferee liability for gift taxes payable on a *nonshareholder's* transfer to the corporation." *Tilton*, 88 T.C. at 599 (emphasis added). J. Howard was a shareholder when he made the transfer that resulted in the indirect gift, so the statement in *Tilton* is inapplicable to the situation in the instant case. In addition, the tax court did not say that transferee liability could never occur in the situation at play in *Tilton*; it simply found that the Government had failed to prove that the transfer resulted in any indirect gift because there was no evidence the transfer increased the value of the stock. *Id.* ("Even assuming, without deciding, that an indirect donee-shareholder under section 2511(a) may be charged with transferee liability as a result of a gratuitous transfer to a corporation by a nonshareholder . . . ."). Thus, *Tilton* does not support holding that the GRIT—and by extension, Stevens—did not receive a present interest.

Further, the Third Circuit's reasoning in *Fidelity Trust* does not persuade us to agree with Stevens. In *Fidelity Trust*, the settlor of several life insurance policies had transferred the policies to a trust. 141 F.2d at 55. The terms of the trust required the trustee to pay out the money from the policies after the settlor died, and it laid out several alternate scenarios for paying the beneficiaries, depending on which beneficiaries were still alive at the time the settlor died. *Id.* The Government tried to argue that beneficiaries of the life insurance policies were donees and attempted to collect gift tax from them. *Id.* at 55–56. The Third Circuit rejected that argument and held that the trust was the donee. *Id.* at 57. The court characterized the interests of the

beneficiaries as "future interests" because "the beneficiaries who will ultimately receive the income and the corpus [were] not [then] determinable." *Id.* at 56.  The settlor had not yet died, so it was unclear who would survive him and unclear what they would take.  *Id.*  The situation here is a very different one: J. Howard made the indirect gift, and there is no uncertainty regarding the identity of the other five shareholders who benefited from that gift.  In fact, Stevens herself admits that she received additional distributions after JHM's gift.  Thus, we conclude J. Howard's gift transferred a present interest.

### ii.  The donee of J. Howards' gift

Stevens next argues that the trustee is the donee of J. Howard's gift.  She claims that the district court erred in relying on *Helvering*, which determined who was a donee for purposes of the gift tax exclusion under § 2503.  Stevens argues that § 2503 and § 6324(b) have different purposes and use different language: § 6324(b) is a collection statute and uses the terms "donee" and "property comprised of the gift," while § 2503 confers a benefit on the taxpayer and talks about "person" and "interests in property."  She also argues that, instead of looking to *Helvering*, the panel should look to case law that interprets who is a donee in cases involving estate tax transfer liability under § 6324(a)(2).  According to Stevens, courts have held that trustees—not beneficiaries of trusts—are transferees for purposes of determining transferee liability for the estate tax.  Finally, Stevens argues that this court should follow *Fidelity Trust*, which rejected the construction the Government urges here of § 6324(b)'s predecessor statute and held that the trust was the beneficiary of the gift.

In the alternative, Stevens argues that the remainder beneficiary was the donee of the gift, or at least shares some responsibility for the gift tax lien.  She claims that the GRIT only paid distributions equal to the estimated

quarterly tax liability she owed due to MPI's pass-through taxation, and so the only increase in value she saw was the increased distributions in order to pay higher taxes. Stevens then argues that the remainder beneficiary should share some of the responsibility for the unpaid gift tax because, when the trust terminated, the remainder beneficiary received what remained of the principal and, thus, actually received the increased value from J. Howard's gift. She further argues that the district court misconstrued *Ryerson* and *Pelzer*. Even if those two cases and *Helvering* say that the income beneficiary is a donee for purposes of unpaid gift tax, she contends she should only be held liable for the benefit that she actually received (that is, any increased dividends she was paid because of the higher value of the MPI stock in the GRIT).

The Government, citing Treasury Regulation § 25.2503-2(a) and *Helvering*, 312 U.S. at 396–98, responds that "[t]he law is well settled that, for gift tax purposes, trust beneficiaries holding a beneficial interest in trust property are treated as the donees of gratuitous transfers of property or wealth to the trust." While the Government agrees that there is case law stating that the estate tax and gift tax are *in pari materia*, the Government disagrees that principle is controlling here the statute imposing a lien for estate taxes differs from the statute imposing a lien for gift taxes. Even if the statutes on liens for estate and gift taxes should be construed together, that does not mean that we should ignore the clear differences in the language of the two statutes.

We hold that Stevens, as trust beneficiary, was the donee of J. Howard's gift. When determining who qualifies as a donee under § 6324(b), we know that statutory language "cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea–Land Servs., Inc*, 132 S. Ct. 1350, 1357 (2012) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)) (internal quotation marks

omitted).  "Where possible, statutes must be read in harmony with one another so as to give meaning to each provision." *United States v. Caldera–Herrara*, 930 F.2d 409 (5th Cir. 1991).

The Supreme Court's decision in *Helvering* helps guide our decision because it determined who qualified as a donee in another part of the same statutory scheme.  In *Helvering*, the Supreme Count considered if, when a donor made a gift to a trust, the trustee was the only donee—and so the donor could only claim one gift tax exclusion—or if instead each beneficiary of the trust was a donee—and so the donor could claim as many gift tax exclusions as there were beneficiaries.  312 U.S. at 396–98.  The Supreme Court held that "the beneficiary of the trust to whose benefit the surrender inures . . . is the 'person' or 'individual' to whom the gift is made." *Id.* at 396.  "One does not speak of making a gift to a trust rather than to his children who are its beneficiaries." *Id.*  Applying the "natural sense" of the words, the Supreme Court held that, when a donor makes a gift to a trust, the beneficiary of the trust is the donee and the donor can claim as many exclusions as beneficiaries. *Id.* at 396–97.

*Helvering* determined who the donee was for purposes of the gift tax exclusion under the statute that was the predecessor to § 2504, and in the current Internal Revenue Code, § 2504 is part of chapter 12.  I.R.C. § 2504.  Chapter 12 is the proper place to look to understand whether Stevens is a donee: chapter 12 governs gift taxes, the issue we are deciding, and both §§ 6324(b) 6901 refer back to chapter 12 when defining transferee liability for unpaid gift taxes. *See* I.R.C. § 6324(b) (imposing personal liability on a transferee for unpaid gift tax "unless the gift tax imposed by chapter 12 is sooner paid in full or becomes unenforceable"); I.R.C. § 6901(a)(1)(A) ("The liability, at law or in equity of a transferee of property . . . of a donor in the case of a tax imposed by chapter 12").  Thus, all of the statutes that help us to

understand the nature of the transferee's obligation for unpaid gift taxes do so by reference to chapter 12. *Helvering* tells us that the beneficiary of the trust is the donee for purposes of the gift tax under chapter 12. 312 U.S. at 396. ("[I]t would seem to follow that the beneficiary of the trust to whose benefit the surrender inures . . . is the 'person' or 'individual' to whom the gift is made."). Applying *Helvering*'s determination that the trust's beneficiary was the donee to the instant case, we conclude that Stevens, as beneficiary of the trust, was the donee of J. Howard's gift.

Admittedly, as Stevens points out, §§ 2503 and 6324(b) do not use the same words. Thus, the canon of statutory construction that "assumes that 'identical words used in different parts of the same act are intended to have the same meaning'" might not apply because the words are not, strictly speaking, identical. *See Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986) (quoting *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87 (1934)). However, our reasoning does not rely on §§ 2503 and 6324(b) using the same words. Instead, we rely on the fact that whenever the Internal Revenue Code defines the transferee's liability for unpaid gift taxes, it refers to chapter 12. Our conclusion simply applies a consistent definition of the person who is the donee under chapter 12 throughout the Code.

Further, although the statutes on gift taxes and estate taxes are meant to be construed in light of each other, that guiding principle does not require us to agree with Stevens's argument. Though our Court has not addressed the specific issue, Stevens is correct that some other courts have interpreted the estate taxes lien provision of the Internal Revenue Code, § 6324(a), and held that trust beneficiaries do not have personal liability for unpaid estate tax. *See Higley v. Comm'r*, 69 F.2d 160, 163 (8th Cir. 1934) ("It is very natural to presume that Congress deemed payment of the tax sufficiently secured by a lien on the property and by imposing a *personal liability on the trustee* without

29

going further and placing this real hardship on beneficiaries who would often be hopelessly unable to bear it." (emphasis added)); *Englert v. Comm'r*, 32 T.C. 1008, 1015–16 (1959) (finding that a trust beneficiary was not personally liable for unpaid estate taxes because the trustee, not the beneficiary, held the property in question).    But, there is an important difference between §§ 6324(a)(2) and 6324(b).  The liens for estate tax statute, § 6324(a)(2), explicitly imposes personal liability on trustees, but the word "trustee" is conspicuously missing from the liens for gift tax statute, § 6324(b).  Given the clear differences in the plain language of these statutes, we are not persuaded to follow the courts who have interpreted the statute imposing a lien for estate taxes on the trustee, not the beneficiary of the trust.

We also hold that the remainder beneficiary does not share responsibility for the unpaid gift tax.  First, those arguments appear to be another way of arguing about the amount of the gift Stevens received.  And as we discussed above, *see supra* Part IV(B)(1), if Stevens was a donee, she cannot relitigate the amount of the gift because of the Stipulation and the 2008 Tax Court decisions.  Second, despite her argument to the contrary, there is evidence that Stevens received a present benefit because the distributions from the trust increased after J. Howard made his gift.  Finally, neither *Ryerson* nor *Pelzer* compel a different result.  Although the Supreme Court held that the interests at issue in *Ryerson* and *Pelzer* were future interests (and, therefore, not eligible for a gift tax exclusion), the interests at issue in those cases are different from the interest Stevens received.  In both *Ryerson* and *Pelzer*, the gifts were put in trusts that were not to be distributed to the beneficiaries until a certain period of time passed, the beneficiaries reached a certain age, or the beneficiaries survived a certain individual.  *Ryerson*, 312 U.S. at 409; *Pelzer*, 312 U.S. at 402.  Unlike Stevens, who was already receiving distributions from the GRIT and who earned higher payouts because of J. Howard's gift, the trust

beneficiaries in *Ryerson* and *Pelzer* truly received no present benefit from the gift to the trust. *Ryerson*, 312 U.S. at 409; *Pelzer*, 312 U.S. at 402. Thus, we conclude that the remainder beneficiary is not required to share payment of the gift tax.

### iii. Ordinary course of business exception

Finally, Stevens claims that, even if the income beneficiary of a trust is a donee for gift tax purposes, the ordinary course of business exception applies because the Government did not prove that there was donative intent. She argues that, in other cases involving indirect gifts, the ordinary course of business exception did not apply because, given the close family relationship between the donor and the shareholders, courts were able to infer donative intent. Here, however, at the time the gift was made, J. Howard and Stevens had been divorced for more than thirty-five years and each had remarried (J. Howard was married to his third wife at the time of the indirect gift). Thus, according to Stevens, the Government failed to prove that there was a close family relationship and that this was a gift.

We disagree. Under the ordinary course of business exception, "a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth." S*ee* Treas. Reg. § 25.2512-8. But, courts look to the donor's intent to determine whether a gift has been made, and the term gift is used in a very broad sense when talking about the gift tax. *Comm'r v. Wemyss*, 324 U.S. 303, 306–07 ("If we are to isolate as an independently reviewable question of law the view of the Tax Court that money consideration must benefit the donor to relieve a transfer by him from being a gift, we think the Tax Court was correct."). Here, the Stipulations and 2008 Tax Court decisions are clear that J. Howard made a gift to Stevens. So because we determine that

Stevens was a donee, res judicata bars her from arguing that J. Howard did not make a gift to her.

## C. The Federal Priority Statute

The Federal Priority Statute provides that:

(a)(1) A claim of the United States Government shall be paid first when—

  (A) a person indebted to the Government is insolvent and—

    (i) the debtor without enough property to pay all debts makes a voluntary assignment of property;

    (ii) property of the debtor, if absent, is attached; or

    (iii) an act of bankruptcy is committed; or

  (B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.

. . .

(b) A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

31 U.S.C. § 3713.

Hilliard and E. Pierce Jr. argue that the district court committed several errors in holding them liable for distributions from the Living Trust and Stevens's Estate in violation of the Federal Priority Statute. First, they argue that the Government did not prove that they knew about Stevens's potential liability for the unpaid gift tax, and, therefore, they cannot be found to have violated the Federal Priority Statute. Next, they argue there was insufficient evidence for the district court to find them personally liable for: (1) the charitable set-aside; (2) the distribution of personal property and apartment rent from Stevens's Estate; or (3) the payment of legal and accounting fees from the Living Trust. Last, E. Pierce Jr. claims the district court erred in finding that he breached his fiduciary duty under Texas law.

     1. <u>E. Pierce Jr. and Hilliard's knowledge of Stevens's gift tax liability</u>

E. Pierce Jr. and Hilliard argue that the Government failed to show that they knew about the potential liability to the Government. They acknowledge that, under *United States v. Renda*, 709 F.3d 472, 484–85 (5th Cir. 2013), erroneous legal advice as to the validity of a claim is not an excuse under the Federal Priority Statute. But, they argue that *Renda* only applies when the claim has actually been made, and therefore does not apply here where they allegedly had knowledge of the potential claim while the Government delayed in making the claim. They also point to *Little v. Commissioner*, 113 T.C. 474 (1999) to argue that advice of legal counsel is a defense under the Federal Priority Statute with regard to potential claims. The Government flatly rejects any argument about E. Pierce Jr.'s and Hilliard's lack of knowledge because they both admitted during depositions that they knew of the potential donee gift tax liability to the Government in excess of $35 million.

Liability under the Federal Priority Statute requires that (1) a fiduciary (2) distributed the estate's assets before paying a claim of the Government and (3) knew or should have known of the Government's claim. *See Renda*, 709 F.3d at 480–81. The only dispute in this case is whether E. Pierce Jr. and Hilliard met the knowledge requirement. Actual knowledge is not required; "[t]he knowledge requirement of [31 U.S.C. § 3713] may be satisfied by either actual knowledge of the liability or notice of such facts as would put a reasonably prudent person on inquiry as to the existence of the unpaid claim of the United States." *Leigh v. Comm'r*, 72 T.C. 1105, 1110 (1979) (citations omitted).

We hold that Hilliard and E. Pierce Jr. knew of the potential liability to the Government, and thus, the Federal Priority Statute applies. In *Renda*, this Court held that "a representative's actual knowledge of a federal claim is sufficient, notwithstanding that representative's reliance on the erroneous advice of counsel as to how to address the claim." *Renda*, 709 F.3d at 484. We

are unpersuaded by E. Pierce Jr.'s and Hilliard's reliance on *Little* to distinguish their case from *Renda* based only on the fact that the Government had not made an actual claim against Stevens's Estate when they received the erroneous legal advice. This Court has already declined to follow *Little* to the extent that its analysis of the effect of erroneous legal advice "is inconsistent with the weight of authority on this issue." *Renda*, 709 F.3d at 484 n.15. The same considerations that, in *Renda*, led us to refuse to read an exception due to erroneous legal advice into the Federal Priority Statute apply with equal force here: (1) "the statute does not provide for an attorney-reliance exception," and (2) "a contrary interpretation would create an exception to the Priority Statute that might swallow the rule." *Id.* at 485. Thus, because erroneous legal advice as to the validity of a claim is not an excuse for violating the Federal Priority Statute and E. Pierce Jr. and Hilliard both admitted in depositions that they had knowledge of the potential claims against Stevens's Estate, we hold that the Federal Priority Statute applies.

2. <u>E. Pierce Jr. and Hilliard's personally liability</u>

E. Pierce Jr. and Hilliard argue that the district court erred in granting the Government's motion for summary judgment in two ways. First, they claim E. Pierce Jr. should not have been held personally liable for the I.R.C. § 642(c) charitable set-aside. Second, they argue that the evidence was insufficient to support the claims against them related to (1) distribution of personal property from Stevens's Estate, (2) rent payments on Stevens's apartment, and (3) legal and accounting fees paid from the Living Trust to other charitable organizations.

*i. Personal liability for the charitable set-aside*

E. Pierce Jr. points out that, under Treasury Regulation § 1.642(c)-2(d), funds permanently set aside for a charitable purpose are subject to invasion. So if the Government disallows the set-aside, he argues, the funds will be

No. 12-20804

available to pay the Government. Thus, he should not be personally liable for the charitable set-aside. The Government responds that by arguing that the charitable set-aside funds are subject to invasion, E. Pierce Jr. and Hilliard are trying to have things both ways. The Government says that, when the Government tried to disallow the charitable set-aside, E. Pierce Jr. filed a petition in tax court challenging the disallowance. In response, E. Pierce Jr. claims that it is not inconsistent to challenge the attempt to disallow the charitable set-aside. He argues that his position in the petition before the tax court was that the money will be spent on charity because, after he succeeds in the case before the panel (and is not required to pay that money to the Government), the money will go to charity.

We hold that the district court did not err in finding E. Pierce Jr. and Hilliard jointly liable for the charitable set-aside. First, although E. Pierce Jr. claims that the Government can disallow the charitable set-aside, it is far from clear that is the case. In fact, the Government has tried and failed to disallow the charitable deduction in this case. Further, the Federal Priority Statute does not appear to limit liability even if we assume that the distribution can be returned. *See* 31 U.S.C. § 3713(b) ("A representative of a person or an estate . . . paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government."). Thus, Hilliard and E. Pierce Jr. are liable under the Federal Priority Statute for the amount of the charitable set-aside.

### ii. *Sufficiency of the evidence*

E. Pierce Jr. argues that the Government did not present enough evidence to hold him personally liable for distributing personal property from Stevens's Estate. He claims that the district court wrongly discredited his statement that had he not sold the personal property, Stevens's Estate would have been charged to store it. E. Pierce Jr. further claims the Government

35

proffered insufficient evidence for the district court to find him liable for disbursing funds from Stevens's Estate to pay for rent on her vacant apartment.   According to E. Pierce Jr., the Government failed to prove conclusively that his payments on the apartment exceeded an amount that was reasonable and necessary.   Finally, Hilliard argues the evidence did not support holding him personally liable for the accounting and legal fees he paid to other charitable organizations from the Living Trust, as trustee.   Hilliard claims he did not cause any damage in paying the fees because Stevens told him to pay them, he could have reclaimed the fees under Louisiana law, and all the funds that were disbursed have already been repaid.

Turning first to E. Pierce Jr.'s liability for selling personal property from Stevens's Estate, we hold that the district court did not err in finding him personally liable.   E. Pierce Jr.'s primary argument—that he had to sell the property in order to avoid having to make expenditures to store it—does not change his liability under § 3713.  As the district court correctly observed, "the proceeds from the sale of [Stevens's] car did not require storage . . . [and] could have been held in [Stevens's] Estate's account."   E. Pierce Jr. was not found liable under the Federal Priority Statute merely because he sold the personal property; instead, he was found liable for distributing the personal property to others before paying the debt to the Government.   Thus, we hold E. Pierce Jr. is individually liable for the value of the personal property he distributed from Stevens's Estate.

We turn next to E. Pierce Jr.'s claims regarding his liability for the rent he paid on Stevens's vacant apartment, and we again hold that the district court did not err in finding him personally liable for those payments.   Before the district court, E. Pierce Jr. argued that he paid the rent to allow a "Quaker-style memorial service in [Stevens's] home."   The district court accepted that argument as true, as it should have.   Texas law limits the amount of funeral

No. 12-20804

expenses that can be characterized as debts of the estate—and, as such, payable before paying the Government—to $15,000. *See* Tex. Est. Code Ann. § 355.103.[9]  The district court found that E. Pierce Jr. was not liable for the first $15,000 that he spent on rent for the funeral service but that he was liable for the amount he spent above the $15,000 allowed under Texas law.  *See id.* We find no error in the district court's analysis, and so we hold E. Pierce Jr. is personally liable for the amount above the $15,000 allowed under Texas law that he, as executor, caused Stevens's Estate to pay in rent on Stevens's apartment.

Finally, we hold that Hilliard is personally liable for the amount he caused the Living Trust to pay for accounting and legal services on behalf of other charitable organizations.  Texas law allows accounting and legal fees to be classified as expenses of the estate (and therefore payable before debts to the Government) if they were "incurred in preserving, safekeeping, and managing *the estate*.'"  *See* Tex. Est. Code Ann. § 355.103 (emphasis added). Hilliard does not dispute that he paid accounting and legal fees that were the benefit of other organizations, not for the management of the estate.  In spite of Hilliard's arguments that he should not be held liable because the funds could be reclaimed, we have not found, nor does Hilliard cite, any law to show that this impacts his liability under the Federal Priority Statute.  *See also supra* Part IV(C)(2)(i).  Thus, the district court did not err in holding Hilliard personally liable for paying the accounting and legal fees.

3. <u>E. Pierce Jr.'s fiduciary duty</u>

---

[9] On January 1, 2014, the Texas Probate Code was repealed and the Texas Estates Code became effective.  The district court relied on former Texas Probate Code § 322 in making its decision.  Texas Estates Code § 355.103 includes the portions of Texas Probate Code § 322 on which the district court relied.  Thus, the repeal of the Texas Probate Code and the enactment of the Texas Estates Code does not impact our decision to affirm the district court.

No. 12-20804

Finally, E. Pierce Jr. argues that the district court erred in finding he breached his fiduciary duty under state law.  He claims that under Texas law, advice of counsel is a factor to be considered in determining whether there was a breach of fiduciary duty.  *See Griffin v. Box*, No. 94-10348, 1996 WL 255296, at \*11 (5th Cir. May 2, 1996) (unpublished) ("Under Texas law, advice of counsel is a factor to be considered in determining whether a breach of fiduciary duty has occurred." (citation omitted)); *see also Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 722–23 (5th Cir. 1984) (directors' reliance on professional advice supported judgment that directors did not breach fiduciary duty).  Further, he claims that under Texas law, an executor does not owe a fiduciary duty to an estate's creditors, including the Government.  The Government argues that Texas case law supports holding that E. Pierce Jr. owed a fiduciary duty to the estate's creditors as executor, but the Government did not respond to his claim that advice of legal counsel can be a defense for breach of fiduciary duty under Texas law.

We hold that E. Pierce Jr. did not breach his fiduciary duty under state law because he did not owe a fiduciary duty to Stevens's Estate's creditors. Texas case law appears to conflict regarding whether an executor owes a fiduciary duty to an estate's creditors.  *Compare FCLT Loans, L.P. v. Estate of Bracher*, 93 S.W.3d 469, 481–82 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("However, no such formal recognition [of a fiduciary duty as a matter of law] exists for the relationship between an independent executor and the estate's *creditors*.") *with Ertel v. O'Brien*, 852 S.W.2d 17, 20–21 (Tex. App.—Waco 1993, writ denied) (describing the relationship between the executor and a creditor as fiduciary).  It appears that the Supreme Court of Texas has not addressed this issue, and so we must make an "Erie guess" and "determine as best [we] can" what the Supreme Court of Texas would decide.  *See Howe v.*

38

No. 12-20804

*Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000) (citations and internal quotation marks omitted).

We hold that the district court erred in finding E. Pierce Jr. breached his fiduciary duty under Texas law.  *Bracher* provides useful guidance in reconciling this seemingly contradictory Texas case law.  As the *Bracher* court explained, the two Texas intermediate appellate court cases that suggested an executor owes a fiduciary duty to an estate's creditor, *Ertel* and *Ex parte Buller*, 834 S.W.2d 622 (Tex. App.—Beaumont 1992, orig. proceeding [pet. denied]), are distinguishable from a situation like the one presented in the instant case. *See Bracher*, 93 S.W. 3d at 481.  In the *Bracher* court's view, Ertel held that an executor had a statutory duty to pay a claim against the estate and was "held to the same fiduciary standards as a trustee"; but, the *Ertel* court did not provide any "analysis or explanation why an independent executor's fiduciary duty to the estate should be expanded to include a duty to the estate's creditors." *See id.* at 481 (discussing *Ertel*).  And the cases on which *Buller* based its holding do not discuss whether an independent executor, like E. Pierce Jr., owes a fiduciary duty to the estate's creditors. *See id.* (discussing *Buller*).  So, we agree with *Bracher*'s view that "under [Texas's] statutory scheme," it seems unlikely that "an independent executor automatically holds the estate assets in trust for the benefit of the estate creditors." *See id.*  Thus, because we conclude that E. Pierce Jr. did not owe Stevens's Estate's creditors a fiduciary duty under Texas law, we hold that E. Pierce Jr. did not breach his state law fiduciary duties.

## V. CONCLUSION

For the foregoing reasons, we REVERSE the district court's judgment that E. Pierce Jr. breached his fiduciary duties under state law, and we RENDER judgment in his favor on this point.  As to all other issues, we AFFIRM.

No. 12-20804

PRISCILLA R. OWEN, Circuit Judge, concurring in part, dissenting in part:

I agree with the Third Circuit's resolution of the question of whether a donee's liability for the donor's unpaid gift tax and interest on that tax is limited under 26 U.S.C. § 6324(b) to the value of the gift to the donee.[1] The Third Circuit gave effect to the express limiting language in § 6324(b). The Eighth Circuit likewise limited a transferee's liability for unpaid estate tax and interest based on language in § 6324(a)(2) that is similar to the limiting language in § 6324(b).[2] Three amicus briefs, representing numerous entities, urged our court to follow the Third and Eighth Circuit courts' approach.[3] Much of the reasoning in those amicus briefs is persuasive. Because the panel's majority opinion incorrectly construes the limiting language of § 6324(b) and the effect of other Tax Code sections on that limitation, I respectfully dissent. I otherwise concur in the resolution of the issues presented in this appeal.

# I

The Appellees in this case, to whom I will refer collectively as "the Marshalls," recognize, with exceptions not material to the question of the proper construction of § 6324(b), that they received gifts from the JHM Living Trust. They also recognize that they are liable for the gift tax that was not paid by the JHM Living Trust and interest on that unpaid gift tax up to a point. That point, the Marshalls contend, is "the extent of the value of such gift," as

---

[1] *Poinier v. Comm'r*, 858 F.2d 917, 920 (3d Cir. 1988).

[2] *Baptiste v. Comm'r*, 29 F.3d 433, 437-38 (8th Cir. 1994).

[3] *See* Brief of National Black Chamber of Commerce, Sixty Plus Association, National Garage, Taxpayers Protection Alliance, Center for Individual Freedom, and National Taxpayers Union as Amici Curiae Supporting Appellants and Reversal; Brief of Johnson C. Smith University, Barber-Scotia College, Bennett College, Clinton Junior College, and Wilberforce University as Amici Curiae in Support of Defendants-Appellants and Reversal; and Brief of Tax Foundation & Law Professors as Amici Curiae in Support of Appellants and Urging Reversal.

specified in § 6324(b).[4] The Government seeks to hold the Marshalls personally liable for almost $75 million over and above the value of the gifts that were made to them. Most of that $75 million is interest. The gift tax owed and some of the interest the Government seeks, was, for the most part, paid in 2010. The district court held that the language in § 6324(b) that limits a donee's personal liability "to the extent of the value of such gift" did not limit the Marshalls' liability. The panel's majority opinion affirms the district court's judgment in this regard.

## II

The Tax Code provides in § 6324(b) for a lien to secure the payment of gift taxes. This section says, in pertinent part:

> **(b) Lien for gift tax**.—Except as otherwise provided in subsection (c) [not applicable in this case], unless the gift tax imposed by chapter 12 is sooner paid in full or becomes unenforceable by reason of lapse of time, such tax shall be a lien upon all gifts made during the period for which the return was filed, for 10 years from the date the gifts are made. If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift. . . .[5]

This is the *sole* basis under the Tax Code for the imposition of liability on a donee for gift taxes unpaid by the donor. There is no other basis for a donee's liability for unpaid gift tax, and the panel's majority opinion does not conclude otherwise.

Other provisions in the Tax Code provide that interest on a "tax," with exceptions not applicable here, "shall be deemed also to refer to interest imposed by this section [6601] on such tax."[6] As indicated, the Marshalls do

---

[4] 26 U.S.C. § 6324(b).

[5] *Id.*

[6] *Id.* § 6601(e)(1).

not dispute that they are liable for the gift tax as well as the interest that the donor did not pay on the gift tax, but only "to the extent of the value of such gift."[7]  The language of § 6324(b) clearly supports their position.  It provides that "such tax," which would include the gift tax and interest, "shall be a lien upon all gifts made during the period for which the return was filed," and "[i]f the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift."[8]  Accordingly, if "the tax," meaning the gift tax plus interest, is not paid, the donee of any gift is personally liable for "*such tax*," again meaning the gift tax and interest, but only "to the extent of the value of such gift."[9]  The donee's personal liability is for "such tax," and that personal liability is limited to the value of the gift to the donee.

In spite of the clear language of § 6324(b), the panel's majority opinion concludes that "[s]ection 6324(b), however, says nothing about any limit on the donee's liability and the Government's ability to assess interest when the donee fails to fulfill his or her obligation to pay the donor's unpaid gift tax."[10]  But if, as all concede, the words "personally liable for such tax" in § 6324(b) include liability for interest, then the words "to the extent of the value of such gift" are a limit on the amount of interest that can be collected.  As an example, if a gift of $10,000 was made, and the unpaid tax on that gift was $5,000, "such tax" would refer to the $5,000 tax and interest that began accruing as of the time the gift tax was unpaid.  Let us assume that at the time that the Government demanded that the donee pay the gift tax, interest in the amount

---

[7] *Id*. § 6324(b).

[8] *Id*.

[9] *Id*.

[10] *Ante* at 12-13.

of $1,000 had accrued.  The donee would be liable for the $5,000 plus $1,000 of interest.  Let us further assume that the donee did not pay until interest in the amount of $4,000 had accrued.  The Government could collect this interest when the donee failed to fulfill his or her obligation to pay, but only "to the extent of the value of such gift."  Since $9,000 is less than the $10,000 value of the gift, the donee would be personally liable for the interest.  But once the interest reached $5,000, the donee would not be personally liable for further interest because § 6324(b) limits the donee's personal liability to $10,000 in this example.

Contrary to the reasoning of the panel's majority opinion,[11] a donee does have an incentive to pay the gift tax in order to stop the accrual of interest. The sooner that a donee pays the gift tax, the less interest that will be owed, at least until the initial tax plus accrued interest equals the value of the gift to the donee.  However, once the combined amount of the gift tax unpaid on the due date and accrued interest equals the value of the gift to the donee, the donee's liability is capped at "the value of [the] gift" to the donee.[12]  Section 6324(b) undoubtedly addresses a "limit on the donee's liability and the Government's ability to assess interest when the donee fails to fulfill his or her obligation to pay the donor's unpaid gift tax" and the majority opinion is mistaken in concluding otherwise.[13]

Nothing in § 6901(a) affects the limitation of liability in § 6324(b). Section 6901(a) provides that the amounts of a donee's liability relating to gift taxes are to "be assessed, paid, and collected in the same manner and subject

---

[11] *Ante* at 20 (reasoning that "our decision encourages transferees to fulfill their obligation to pay any unpaid gift taxes in a timely manner").

[12] 26 U.S.C. § 6324(b).

[13] *Ante* at 12-13.

to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred . . . ."[14] The United States Supreme Court has held that § 6901 is a procedural provision and does not create any substantive liability.[15]  The panel's majority opinion acknowledges the Supreme Court's interpretation of § 6901(a) and recognizes that "the donee's personal liability that incurs interest must come from a statute other than § 6901."[16]  But the majority opinion then engages in circular reasoning, concluding that because "[s]ection 6901 explains that transferee liability imposed under § 6324(b) is 'subject to the same provisions' as the underlying gift tax," all interest imposed by § 6601 is owed by a donee, notwithstanding the express limitation in § 6324(b).[17]  The majority opinion says, "read together, these sections [6901 and 6601] explain that the donee's personal, independent liability for the unpaid gift tax is subject to the interest provisions of § 6601."  If, as the Supreme Court has held, § 6901 does not create any substantive rights and is procedural only, then § 6901 should play no part in determining the extent of a donee's personal liability created by § 6324(b).  We should consider only § 6324(b) to determine whether the generally applicable Tax Code provision regarding accrual of interest on unpaid taxes, which is § 6601, overrides the express limitation in § 6324(b).

The first paragraph of § 6601, which is subsection (a), is denominated the "[g]eneral rule" and provides that if a tax is not paid on or before the last date for payment, then interest must be paid on that amount from the last date

---

[14] 26 U.S.C. § 6901(a).

[15] *Comm'r v. Stern*, 357 U.S. 39, 42-44 (1958) ("The courts have repeatedly recognized that [§ 6901's predecessor statute] neither creates nor defines a substantive liability but provides merely a new procedure by which the Government may collect taxes.").

[16] *Ante* at 16.

[17] *Ante* at 17.

prescribed for payment until the date paid.[18]  It is hornbook law that a more specific statute, such as § 6324(b), governs over a more general statute, such as § 6601.   It is also a "longstanding canon of construction" that if "'the words of a tax statute are doubtful, the doubt must be resolved against the government and in favor of the taxpayer.'"[19]  There is certainly room for doubt that a donee is liable for the full amount of interest that accrues on an unpaid gift tax, regardless of the value of the gift to the donee, in light of the express limitation in § 6324(b).

The Third Circuit has held that a donee's liability under § 6324(b) is limited to the value of the gift to the donee.[20]  Similarly, the Eighth Circuit has held that "a transferee's personal liability [for unpaid estate tax], is limited [by § 6324(a)(2)] 'to the extent of the value at the time of decedent's death' of the property actually transferred."[21]  A third circuit court, the Eleventh Circuit, construing § 6324(a), pertaining to a transferee's liability for estate tax, has disagreed with the Third and Eighth Circuits.[22]  The Commissioner argued in each of those three cases that the liability of a donee for gift tax, or a transferee for estate tax, and accrued interest is not a gift tax or an estate tax but instead is purely a personal liability under § 6324.  Only the Eleventh Circuit agreed

---

[18] 26 U.S.C. § 6601(a).

[19] *Exxon Mobil Corp. & Affiliated Cos. v. Comm'r*, 689 F.3d 191, 199-200 (2d Cir. 2012) (quoting *United States v. Merriam*, 263 U.S. 179, 188 (1923)); *see also United Dominion Indus., Inc. v. United States*, 532 U.S. 822, 839 (2001) (Thomas, J., concurring) (noting the "traditional canon" of construing revenue laws against the drafter); *id.* at 839 n.1 (Stevens, J., dissenting) (acknowledging this canon).

[20] *Poinier v. Comm'r*, 858 F.2d 917, 920 (3d Cir. 1988).

[21] *Baptiste v. Comm'r*, 29 F.3d 433, 437 (8th Cir. 1994) (quoting 26 U.S.C. § 6324(a)(2)).

[22] *Baptiste v. Comm'r*, 29 F.3d 1533 (11th Cir. 1994).

with the Government, holding that "the obligation imposed by section 6324(a)(2) is a nontax liability."[23]

The Government similarly argues in the present case that "the limitation imposed by I.R.C. § 6324(b) applies only to interest that accrued on the underlying *gift tax* liability; that limit does not apply to the interest accruing on the donee's *personal* liability under I.R.C. § 6324(b)." The dichotomy that the Government draws between a donee's liability for gift tax and that donee's personal liability is patently contradicted by the text of § 6324(b). A donee's personal liability under § 6324(b) is anchored solely to, and is referable only to, the unpaid gift tax and interest thereon. The donee's personal liability is plainly denominated as liability for gift tax. Section 6324(b) says that "such tax," unmistakably referring to "the gift tax imposed by chapter 12," "shall be a lien upon all gifts made" and that "[i]f the tax [clearly meaning the gift tax] is not paid when due, the donee of any gift shall be personally liable for *such tax* [here again, the gift tax imposed by chapter 12] to the extent of the value of such gift."[24] A donee is "personally liable" only for "such tax"—the gift tax and accrued interest—"to the extent of the value of such gift." The text could not be plainer.

## III

The panel's majority opinion unnecessarily engages in an analysis of the legislative history of § 6901. As discussed above, that Tax Code section does not create any substantive liability. Nor does its text purport to override the specific limitation of a transferee's liability in § 6324(b). In any event, since § 6324(b)'s limitation is clear on its face, there is no reason to consider § 6901's

---

[23] *Id.* at 1541.

[24] 26 U.S.C. § 6324(b) (emphasis added).

legislative history.[25]  Reliance on legislative history is suspect even if a tax statute is ambiguous because, as noted above, there is a "longstanding canon of construction" that if "'the words of a tax statute are doubtful, the doubt must be resolved against the government and in favor of the taxpayer.'"[26]

The conclusions drawn by the majority opinion from the legislative history of § 6901, a procedural statute, are tenuous, at best.[27]  Attempting to divine congressional intent based on scraps of legislative history is more likely to result in the effectuation of a court's policy preferences than those of Congress.

The panel's majority opinion notes that after the Third Circuit decided *Poinier*,[28] "Congress repealed § 6601(f)(2), and there is no longer a specific prohibition on collecting interest on the interest assessed under § 6601."[29]  While the Third Circuit's decision in *Poinier* did discuss former § 6601(f)(2), that was not the sole basis for its holding.[30]  The Third Circuit held that the "limitation on donee liability is both consistent with the plain language of section 6324(b) and sensible."[31]  The Third Circuit also rejected the Government's argument that a transferee has an independent liability for

---

[25] *See United States v. Woods*, 134 S. Ct. 557, 567 n.5 (2013) ("Whether or not legislative history is ever relevant, it need not be consulted when, as here, the statutory text is unambiguous."); *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 451 (5th Cir. 2008) ("'Only after application of the principles of statutory construction, including the canons of construction, and after a conclusion that the statute is ambiguous may the court turn to legislative history.'") (quoting *Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 518-19 (5th Cir. 2004)).

[26] *Supra* note 19.

[27] *See Ante* at 17-18.

[28] *Poinier v. Comm'r*, 858 F.2d 917 (3d Cir. 1988).

[29] *Ante* at 18.

[30] *Poinier*, 858 F.2d at 920-21.

[31] *Id*. at 920.

interest that is separate and distinct from the gift tax liability.[32]  The Third Circuit said:

> The Commissioner's position, accepted by the Tax Court, is that there is an entirely independent liability for interest, placed directly on the transferee, which arises at the time of service of a notice of transferee liability.  This is not an easy argument to articulate, for unlike the donee liability provision in section 6324(b), the Commissioner can point to no specific code provision imposing such an independent liability on a transferee.[33]

I agree with the Third Circuit.

The panel's majority opinion also relies on this court's decision in *Patterson v. Sims*,[34] asserting that "our decision today follows naturally from that holding."[35]   However, the decision in *Patterson* involved income tax liability, and there was no Tax Code provision that had a limitation even remotely similar to that contained in § 6324(b).[36]

Finally, the panel's majority opinion says that its decision "is consistent with the 'traditional rule that one who possesses funds of the government must pay interest for the period that person enjoys the benefit of [the] same,'" citing the Eleventh Circuit's decision in *Baptiste*.[37]  But "traditional rule[s]" cannot override contrary statutory provisions.

*     *     *

Because § 6324(b) unambiguously limits a donee's personal liability to the value of the gift to the donee, I would reverse the district court on this issue.

---

[32] *Id.*

[33] *Id.*

[34] 281 F.2d 577 (5th Cir. 1960).

[35] *Ante* at 19.

[36] *Patterson*, 281 F.2d at 578-79, 581.

[37] *Ante* at 19 (citing *Baptiste v. Comm'r*, 29 F.3d 1533, 1542 (11th Cir. 1994)).